Argued September 11; affirmed October 8; rehearing denied
December 23, 1940

## RAVLIN ET AL. *v.* HOOD RIVER PEOPLES' UTILITY DISTRICT ET AL.

(106 P. (2d) 157)

*Celia Gavin,* of The Dalles (Gavin & Gavin, of The Dalles, on the brief), for appellants.

*F. A. LeSourd,* of Seattle, Washington (Teunis J. Wyers, of Hood River, on the brief), for respondents.

*F. P. Keenan* and *Gus J. Solomon,* amici curiae.

BELT, J. These two suits—consolidated here and in the lower court for hearing—challenge the validity of the organization of the Hood River Peoples' Utility District and the election of its board of directors. The facts are undisputed.

On March 10, 1938, separate voters' preliminary petitions were filed with the Hydroelectric Commission of Oregon requesting a preliminary investigation as to the advisability of creating a peoples' utility district comprised of the entire territory within the corporate limits of the city of Hood River and certain unincorporated territory in Hood River county. A "parcel of territory" is defined in the "Peoples' Utility District Law" (§ 56-3402 (subdivision 5), Oregon Code Supplement 1935) as a portion of unincorporated territory. The words, "parcel of territory" will be so understood when used in this opinion. The territory within the city of Hood River will be referred to as the "municipality."

The Hydroelectric Commission, pursuant to such petitions—one being presented by the voters within

the unincorporated territory and the other by the voters within the city of Hood River—made its preliminary investigation as to the advisability of forming the proposed district, and thereafter set a time and place for a public hearing on such question.

At such hearing, the commission, after having considered evidence offered in favor of the creation of the district and against it, rendered its report that formation of the proposed district was advisable.

Thereafter separate final petitions were filed with the commission requesting it to call an election submitting to the voters the question of creating a Hood River Peoples' Utility District as described in the preliminary petitions and recommended in the final report of the commission.

An election on such question was held on June 19, 1939, a majority of all votes cast favoring the creation of the district. However, a majority of voters in that part of the proposed district comprising the city of Hood River voted against the formation of the district.

The commission, at a meeting on July 14, 1939, examined the results of the election and heard arguments on the question of forming a Hood River Peoples' Utility District with reformed boundaries to exclude the territory within the city of Hood River. At the conclusion of the meeting, the commission "recommended" the creation of a Hood River Peoples' Utility District with reformed boundaries to exclude the territory of the city of Hood River; ordered that certificates of election for directors of such district be issued to five candidates, viz., A. C. Johnsen, Mrs. Wm. Munroe, Ralph W. Perry, Jas. R. Forden, and Norval Shurtliff, who received the highest numbers of votes within the entire territory of the proposed district; and issued

a proclamation that such district had been duly incorporated.

Thereupon these suits were commenced and from decrees sustaining the validity of the formation of the district and the election of the board of directors, this appeal has been taken.

Plaintiffs' principal contention is that the district, as created, was not authorized by the voters and that if § 56-3403, Oregon Code Supplement 1935, be construed to authorize the establishment of a district with reformed boundaries, as in the instant case, it is unconstitutional in that there is an unlawful delegation of power.

The precise question is: Can a utility district be legally created from unincorporated territory within a proposed district when the majority of the voters of a municipality included therein vote against its formation? It is conceded that the city of Hood River could not be included in the district, as a majority of its voters were opposed to the formation thereof. Does it follow that, when the municipality is eliminated from the district, the "parcel of territory" included therein cannot be formed into a district, even though the commission recommends it?

When the Peoples' Utility District Law was originally enacted in 1931 (Ch. 279, Laws of Oregon for 1931), it was specifically provided in section 12 thereof that:

"Such districts shall not be formed unless a majority of the voters in both said municipality and in said parcel of territory shall vote in favor of the formation of said utility district."

However, the legislature, in 1933 (ch. 272, Laws of Oregon for 1933) amended section 12 of the original act

by eliminating therefrom the above-quoted restriction upon the right of the people to create utility districts. As further evidencing the legislative intent to remove such restriction, section 3 of the original act providing for the formation of utility districts was also amended in 1933 (§ 56-3403, Oregon Code Supplement 1935) by providing:

"that if the commission shall so recommend, the municipalities and/or separate parcels of territory which voted in favor of the formation of the proposed district at said election may be formed into a district with reformed boundaries in agreement with the recommendation of the commission;   *   *   *"

It was further provided in the 1933 amendment (codified as § 56-3403, Oregon Code Supplement 1935) that:

"Petitions asking that an election be held to determine whether or not a district shall be created shall set forth and particularly describe the boundaries of the proposed peoples' utility district, and shall state that in the event the people within any one (1) or more municipalities or parcels of territory within said proposed district shall vote against the formation of such district, then, and in that event, that portion of said district which voted in favor of the organization of a peoples' utility district, may, upon the recommendation of the commission, be organized into a peoples' utility district."

■ In view of the above amendments, it is clear that the legislature intended that, where a municipality voted itself out of a proposed district, a utility district could be created out of the remaining "parcel of territory" voting in favor of the formation of the district, if the commission so recommended.

Since it was impracticable for the legislature to determine by general laws the boundaries of utility

districts—and, indeed, it had no power to do so by special enactments—it conferred authority upon the hydroelectric commission, acting as an administrative body, to determine whether creation of a district with reformed boundaries would be feasible and conducive to public welfare. The commission, with the aid of its experts and engineers, had made an exhaustive investigation of the conditions in both units of the proposed district. Its report, based upon such investigation and the evidence adduced at public hearings, led to the conclusion that a utility district was feasible notwithstanding the city of Hood River was not to be included therein.

It is plain that the commission had the authority before an election to change the boundaries of a proposed district in the interests of the public welfare. Section 56-3419, Oregon Code Supplement 1935, provides as follows:

"If, after such hearing, the commission shall find that any portion of territory has been included in a proposed district that should not have been, or that any territory has been omitted therefrom that should, in the interests of the public welfare, have been included, the commission shall recommend such changes in the boundaries of such proposed district as the commission deems just, and conducive to the public welfare. Such recommendations shall be included in its final report."

Section 56-3420, Oregon Code Supplement 1935, also provides in reference to change of boundaries:

"If the commission, in its final report, shall recommend changes in the boundaries of the proposed district described in the preliminary petition, the sponsors of said preliminary petition *may*, in their final petition, change the boundaries of the proposed district to conform to such recommendation and, upon the filing of

the final petition *so modified,* an election shall be called to determine whether such utility district shall be formed of the territory described in said final petition. The same number of qualified voters, and no more, shall be required on such final petition as upon any other final petition.'' (Italics ours.)

In *In re People's Utility District,* 160 Or. 530, 86 P. (2d) 460, it was urged that the act purporting to authorize the formation of utility districts violated Art. III, § 1, of the Constitution of Oregon, prohibiting a delegation of legislative power, but the court held against such contention. Relative to § 56-3420, Oregon Code Supplement 1935—referred to in the opinion as section 20 of the original act—the court said:

''It will be remembered that section 20 of the act provides if the commission in its final report shall recommend the changes in the boundaries of the proposed district described in the preliminary petition, the sponsors of said preliminary petition *may,* in their final petition, change the boundaries of the proposed district to conform to such recommendation. This section further provides that, upon the filing of the final petition so modified, an election shall be called to determine whether such utility district shall be formed of the territory described in the final petition. There is no other way for the sponsors to proceed except to adopt the recommendation of the commission, and it is our opinion that the word 'may' as used in the clause, 'the sponsors of said preliminary petition *may,* in their final petition, change the boundaries of the proposed district', is used in a mandatory sense.''

In determining the question of boundaries—whether before or after an election—the commission is governed by the same standard, viz., that the boundaries fixed must be ''just, and conducive to the public welfare.'' True, no standard is expressly stated in § 56-3403, Ore-

gon Code Supplement 1935, but when such section is considered with other parts of the act wherein the above standard is set forth, the intention of the legislature is clear. If, as the court has held, there was no delegation of legislative authority to the commission under §§ 56-3419 and 56-3420, Oregon Code Supplement 1935, it logically follows that there is none by reason of § 56-3403, Oregon Code Supplement 1935, which pertains to the authority of the commission after an election.

■ We conclude that no exercise of legislative authority by the commission is involved. The commission, acting merely in an administrative capacity, did only that which the people had previously authorized it to do.

■ We think the fallacy of appellants' contention lies in the assumption that the people never consented to the establishment of the district after the city of Hood River had been eliminated therefrom. The separate petitions filed with the commission by the voters within the unincorporated territory and those within the municipality asked, in the language of the statute, that, in the event some unit of the proposed district voted against the formation of such district, a district with reformed boundaries be established provided the commission so recommended. Section 56-3406, Oregon Code Supplement 1935, providing for the calling of an election, specifies that the question to be submitted to the voters is "whether or not there shall be created a district as prayed for in said petition". It is observed that the question is not whether the area proposed as a district should be created as a district, but whether "a" district should be created "as prayed for in said petition." The notice of election states that the question is whether a district shall be formed "as prayed for in the voters' final petitions." The ballot used in this

election specifies that the question is whether the proposed district shall be incorporated in "a" utility district "in accordance with the provisions of Title LVI, Chapter XXXIV, Oregon Code Supplement 1935, as prayed for in the voters' final petitions filed with the Hydroelectric Commission on April 22, 1939." In the light of the record, can it reasonably be contended that the voters did not consent to the establishment of the district in the instant case? Certainly such procedure does not violate the purpose and spirit of the "Home Rule" provisions of the Constitution of Oregon (Art. IV, § 1a and Art. XI, § 12), but is in compliance therewith. As was well said in *Clam River Elec. Co. v. Public Service Commission,* 225 Wis. 198, 274 N. W. 140, a case involving the legality of the establishment of a similar utility district,

"Prior to the election no elector knew or could know what the boundaries of the district would ultimately be if some municipality voted in the negative. Each municipality voted to be incorporated in a district which should be composed of such municipalities as voted favorably."

■ We see no merit in the argument that the legality of the district cannot be sustained for the reason that no municipality is included therein. Article XI, § 12, of the Constitution of Oregon, authorizing the formation of utility districts, thus refutes such contention:

"People's utility districts may be created of territory, contiguous or otherwise, within one or more counties, and may consist of an incorporated municipality, or municipalities, with or without unincorporated territory * * *."

Section 56-3407, Oregon Code Supplement 1935, provides for the formation of a district from a single parcel of territory by voters' petitions. Section 56-3408, Ore-

gon Code Supplement 1935, provides for the formation of districts comprised of two or more separate parcels of territory. Section 56-3411, Oregon Code Supplement 1935, provides for the formation of a district within a single municipality.

■ Appellants also challenge the validity of the district for the reason that the city of Hood River owns and operates a "publicly owned utility for the development and/or distribution of electric energy," and that the legal voters of the municipality never "agreed to an election" to have such municipality included in the district, as required by § 56-3403, Oregon Code Supplement 1935, amended by Ch. 387, Laws of Oregon for 1939. Suffice it to say, the city of Hood River voted against the formation of the proposed district and is not included therein as established. Furthermore no such consent was necessary, as the record plainly discloses that the city was not operating a utility for the development of "electric energy" for public distribution. The city has never sold electricity. The plant merely supplies electricity for street lights and those used in the city hall. The city of Hood River is not complaining and we think appellants are not in a position to complain for them.

■■ Appellants challenge the validity of the election in that the county court attempted to create new election precincts, each of which had more than 500 registered electors, in violation of § 36-201, Oregon Code Supplement 1935, and that the polling places in the election precincts were not sufficiently designated to apprise voters of the place to vote.

In Hood River county there are thirteen regularly established precincts, some of which were not included within the boundaries of the proposed utility district.

Section 56-3421, Oregon Code Supplement 1935, provides:

"The county court shall, in its discretion, designate the number and location of the polling places in such election; provided, that all such designated polling places shall be located within the boundaries of the proposed district."

Acting pursuant to the above section and being cognizant of the difference in boundaries between some of the election precincts and the proposed utility district, the county court designated four polling places for the various election precincts. True, it was irregular to have more than 500 registered electors in an election precinct, but it does not follow that the election is null and void by reason thereof. The designation of polling places "to be the usual ones in such Parkdale, Odell, Barrett and Waucoma Precincts" is sufficient in the light of *State ex rel. v. Bailey,* 151 Or. 496, 51 P. (2d) 671, and *City of Salem v. O. W. Water Serv. Co.,* 144 Or. 93, 23 P. (2d) 539. At any rate, the irregularities of which appellants complain would have been more appropriately presented for consideration in an injunction proceeding instituted prior to the election. There is no showing that, by reason of any alleged irregularity any person was deprived of the right to vote or that the result of the election would have been changed on account thereof.

■ Finally, it is asserted that no board of directors of the utility district has been lawfully constituted or organized and that all proceedings of the board purporting to act are null and void.

The Utility District amendment to the Constitution of Oregon (Art. XI, § 12) provides in part:

"Such districts shall be managed by boards of directors, consisting of five (5) members, who shall be residents of such districts."

Section 56-3430, Oregon Code Supplement 1935, in part provides:

"The management of peoples' utility districts shall be vested in boards of five (5) directors. Upon the formation of a district, the board of directors shall by ordinance divide the said district into five (5) subdivisions, and fix the boundaries thereof, and thereafter one (1) director shall be elected from each of the said five (5) subdivisions. Said directors shall be qualified voters and reside in the subdivision from which they are respectively nominated and elected, and shall have resided in the district continuously for two (2) years immediately preceding the date of their election as directors.  *  *  *"

Section 56-3422, Oregon Code Supplement 1935, provides:

"At all elections where the creation of a district is authorized, five (5) directors shall be elected to manage and transact the business of such district. Candidates for the office of said director at such election must be qualified voters of the state of Oregon, and must have resided in the proposed district continuously for not less than two (2) years next preceding the date of the election, and must continue to reside in such district during his term of office. Such candidates shall be nominated by petition signed by not less than five (5) qualified voters, which said petition shall be filed with the commission not less than fifty (50) days nor more than sixty (60) days before the date of the election, and the commission forthwith shall, upon the expiration of the time for filing candidates' nomination petition, notify the county clerk or clerks of the county or counties in which such proposed district is located of the names of the candidates for directors and said names shall be by the county clerk or clerks placed upon the official ballot for the formation of the district. All qualified voters of the proposed district shall have the right to vote for five (5) candidates at such election. The five (5) candidates receiving the highest vote shall

be elected to serve until the first Monday in January after the biennial election following the election to create the district, and until their successors are elected and qualified.''

Following the election, the commission issued certificates of election as directors to the five candidates receiving the highest number of votes in the proposed district. Of these five directors, A. C. Johnsen and Norval Shurtliff were not eligible to hold such office for the reason that they resided in the city of Hood River and that unit was voted out of the district. Mr. Shurtliff, however, prior to the proclamation of the creation of the district, established his residence therein by moving from the city. Mr. Johnsen declined to accept the office and his successor was selected by the board of directors, as provided by section 56-3431, Oregon Code Supplement 1935.

In view of the above statutory provisions, it is clear that the candidates might reside anywhere in the proposed district and that they should be elected by the total vote cast at the election, but that before any director could qualify for office he must be a resident of the district finally created. At any rate, the board had a quorum for the transaction of business (§ 56-3432 (c), Oregon Code Supplement 1935).

The decree is affirmed. Neither party is entitled to recover costs or disbursements.

RAND, C. J., and KELLY and LUSK, JJ., concur.