Argued February 10; affirmed April 27; rehearing denied
June 29, 1943

# BOARD OF DIRECTORS OF NORTHERN WASCO COUNTY PEOPLE'S UTILITY DISTRICT
## v. KELLY ET AL.

(137 P. (2d) 295)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Allan A. Smith,* of Portland (Francis F. Hill and Laing, Gray & Smith, all of Portland, and Sam Van Vactor, of The Dalles, on the brief) for appellants.

*Gus J. Solomon,* of Portland (Donald Heisler, of The Dalles, on the brief) for respondent.

HAY, J. On March 3, 1938, preliminary petitions were filed with the Hydroelectric Commission for the formation of a people's utility district to be called Northern Wasco County Peoples' Utility District. The proposed district was to consist of the municipalities of The Dalles, Dufur and Mosier and an unincorporated "parcel of territory". After a hearing upon these petitions, the Commission filed its report approving the proposed district, but recommending the exclusion therefrom of a portion of the "parcel of territory".

On September 16, 1938, final petitions were filed, in which the boundaries of the proposed district were changed in accordance with the recommendations of the Commission, and, pursuant thereto, the Commission called an election, which was held on November 8, 1938. At such election, a majority of the votes cast were opposed to the formation of the district.

On June 15, 1939, the power committee of the Wasco County Pomona Grange, alleged to have been the sponsors of the preliminary and final petitions, requested the Commission to call another election. The Commission thereupon called another election to be held on August 15, 1939. The result of this election was that the over-all vote was in favor of the formation of the proposed district, but a majority of the voters of Dufur and of Mosier voted unfavorably.

Subsequent to such election, and without a further hearing, the Commission, on August 18, 1939, recom-

mended the formation of a district, to be composed of the territory described in the final petitions excepting the municipalities of Dufur and Mosier. Such action is shown by its minutes of August 18, 1939, as follows:

"After due consideration the Commission hereby recommends the creation of the Northern Wasco County Peoples' Utility District with reformed boundaries to be composed of all territory within the proposed district except that within the boundaries and corporate limits of the incorporated towns of Dufur and Mosier.

"It was ORDERED that a proclamation be issued proclaiming that all that part of the proposed district outside of the corporate limits of the municipalities of Dufur and Mosier has been duly and legally incorporated as the Northern Wasco County Peoples' Utility District."

On August 22, 1939, the Commission issued a formal proclamation as follows:

"WHEREAS, the Hydroelectric Commission at a meeting held on August 18, 1939, recommended the creation of the Northern Wasco County Peoples' Utility District with reformed boundaries to be composed of that part of the proposed district outside the corporate limits of the municipalities of Dufur and Mosier;

"NOW, THEREFORE, the undersigned Commission hereby does proclaim and declare that all of that part of the state of Oregon, described as (we omit the legal description of the boundaries), EXCEPTING from the area within said boundaries all territory within the boundaries and corporate limits of the city of Dufur, Oregon, and all territory within the boundaries and corporate limits of the city of Mosier, Oregon, has been duly and legally incorporated as the Northern Wasco County Peoples' Utility District under and pursuant to the constitution and laws of the state of Oregon."

The present proceedings were instituted by the district in order to secure a decree of the court affirming the regularity and legality of the creation of the district. The appellants herein are owners of property within the limits of the district. In the lower court they appeared and answered the petition, contesting the validity of the proceedings by which the district is alleged to have been created. The case was submitted to the court upon the demurrer of the district to the further and separate answer of the contestants, which demurrer was sustained. The contestants having refused to plead further, the court, on March 27, 1942, entered a decree as prayed for in the petition, and the contestants have appealed.

It is conceded by the appellants that most of the points which they make upon this appeal were decided adversely to their position by this court in the case of *Ravlin v. Hood River Peoples' Utility District*, 165 Or. 490, 106 P. (2d) 157. Their counsel, however, so ably and earnestly presented his views, that we were persuaded that, in the public interest, we should carefully reexamine and reconsider that case, and we have accordingly done so.

The appellants insist with great earnestness that the creation of a municipal corporation is a legislative act of the character that may not be delegated. Both public and private corporations, under our constitution, are formed under general laws and not by special legislation. Section 2, Article XI, Constitution. Moreover, the legislative assembly is prohibited from enacting, amending or repealing any charter or act of incorporation for any municipality, city or town, and the power to enact and amend their municipal charter is granted to the legal voters of every city and town, sub-

ject to the constitution and criminal laws of the state. Ibid. The initiative and referendum powers reserved to the people by the constitution are further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation of every character, in or for their respective municipalities and districts. Section 1-a, Article IV, Constitution. Appellants contend, therefore, that the district is such a municipality as could be created only by a vote of the people.

People's utility districts have been classified by this court as municipal corporations. *In re Tillamook People's Utility District*, 160 Or. 530, 540, 86 P. (2d) 460. However, they are not pure municipal corporations, but are more accurately to be classified as quasi-corporations. *Central Pacific Railway Co. v. Ager*, 144 Or. 527, 533, 25 P. (2d) 927; *Greig v. Owyhee Irr. Dist.*, 102 Or. 265, 273, 202 P. 222; *Fallbrook Irr. Dist. v. Bradley*, 164 U. S. 112, 174, 17 S. Ct. 56, 41 L. Ed. 369. The word "municipality", as used in the constitutional amendments referred to in the preceding paragraph, is to be interpreted in a broad and comprehensive sense. It includes such quasi-corporations as ports, (*Rose v. Port of Portland*, 82 Or. 541, 162 P. 498), and, in our opinion, it includes also other governmental agencies, such as irrigation and drainage districts and people's utility districts. People's utility districts are organized for the purpose of furnishing certain utilities to the public at large, among others those of light, heat and power by means of the generation and transmission of electrical energy. For those purposes they are vested with broad powers, including the power of taxation. *Ravlin v. Hood River Peoples' Utility District*, supra; *Brush v. Commissioner*, 300 U. S. 352, 57 S. Ct. 495, 81 L. Ed. 691, 108

A. L. R. 1428; *Pacific Gas & Elec. Co. v. Sacramento M. Utility Dist.,* (C. C. Ninth Circuit) 92 F. (2d) 365, 368.

 We think that the argument that a people's utility district can be formed only by the vote of the people of the district is unsound. The initiative and referendum powers which are reserved to the people of such a district have the effect only of granting to them the right to exercise the referendum upon any laws which might be passed by the legislature in the nature of local, special and municipal legislation in and for their particular municipality. *Rose v. Port of Portland,* supra. However, the legislature is prohibited from creating any corporation by special laws (section 2, Article XI, Constitution; *Rose v. Port of Portland,* supra,) and that, of course, includes such municipalities as people's utility districts. There is nothing in the constitution which grants to municipalities other than cities or towns the right to enact their own charter or act of incorporation. The power to create a corporation is still a legislative function, and the only inhibition upon the legislature in this respect is that it cannot create any corporation by a special law.

 The legislature may, however, provide by general laws for the formation of corporations of all kinds, including municipalities and quasi-municipalities. In enacting such a general law, there is no constitutional provision compelling the legislature to frame the law so that the formation of a municipality other than a city or town shall be dependent upon the affirmative vote of the people of the district proposed to be incorporated. Unless restricted by the constitution, the legislature still possesses full and untrammeled legislative powers, and it cannot be questioned that, although it may not create any corporation by special

law, nevertheless it may, by a general law, either delegate to the people themselves the right to vote upon the question of whether or not a district shall be incorporated as a municipality, or provide that proceedings may be instituted before some tribunal or board, which, upon finding and certifying the existence of a required state of facts, may, by virtue of the statute, certify or proclaim that the proposed municipality has been duly formed. *In re Harper Irr. District*, 108 Or. 598, 617, 216 P. 1020; *School District No. 35 v. Holden*, 78 Or. 267, 272, 151 P. 702.

Parenthetically, we comment that the legislature might have adopted the simpler and less cumbersome procedure which is used in Washington (Rem. Rev. Stat., 1933, sections 11607–11608), of making the formation of the district depend, not upon a majority vote in each separate municipality and portion of unincorporated territory, but upon a majority of all votes cast in the proposed district. It has been suggested that the adoption of the more complicated method was intended as a concession to local autonomy. Brown: People's Utility Districts in Oregon, 20 Ore. L. Rev., 3, 22.

In *In re Harper Irr. District*, supra, this court said:

"It is within the power of the legislature to create an irrigation district, and in the act creating the same, describe the boundaries of the district, the water supply and irrigation system by which the land shall be irrigated, designate the land which will be benefited by such irrigation, and the method of calculating and apportioning such benefits, * * * *."

This was dictum, and we think that it was an incorrect statement of the law, because, as we have observed, the legislature could not create an irrigation district

(which is a municipality) by a special law. However, the court proceeded to set forth a correct statement of the law:

"\* \* \* or it may provide that the formation of such irrigation district shall be accomplished by procedure before some designated tribunal, and vest such tribunal with jurisdiction and power to determine any or all of the questions of fact essential to the organization of the same; \* \* \*".

The legislature has the power to pass a general law which shall be effective upon a contingency such as the affirmative vote of the electors in a given territory or part of the state. 11 Am. Jur., Constitutional Law, section 216; *Fouts v. Hood River,* 46 Or. 492, 498, 81 P. 370, 1 L. R. A., (N. S.) 483, 7 Ann. Cas. 1160. Moreover, it is not a delegation of the legislative function to make laws, for the legislature to pass a general law providing for the incorporation of municipal corporations, fixing the conditions upon which they may be created, and imposing upon some officer or official body the duty of determining whether such conditions exist. 11 Am. Jur., Constitutional Law, section 236; *Rowe v. Ray,* 120 Neb. 118, 231 N. W. 689, 70 A. L. R. 1056, 1060.

The method adopted by the legislature in the present instance was a combination of the two permissible procedures to which we have referred. In the first instance, they permitted the legal voters of the proposed district to vote upon the question of the formation of the district, not because the people had an absolute right to do so in the exercise of home rule, as might be inferred from a somewhat general statement in *Smith v. Hurlburt,* 108 Or. 690, 704, 217 P. 1093, but simply because that is one of the permissible procedures in the premises. If the election had resulted in a vote

favorable to the formation of the district, in all of the separate voting districts which are provided in the act, then nothing would have remained to be done except for the Commission to make the necessary finding that the requirements of the act had been fulfilled and proclaim the formation of the district. However, the legislature provided that in the event that the over-all vote was favorable to the formation of the district, but one or more municipalities or portions of territory should exclude themselves by voting negatively, then the second permissible procedure was brought into play. By that procedure, the Hydroelectric Commission is given the power to make a finding as to whether or not that portion of the proposed district which voted favorably may be formed into a people's utility district which will be just, and conducive to the public welfare. If it so finds and "recommends", it may issue its proclamation declaring that such district has been duly formed, and thereupon the district is formed and incorporated by force of the statute.

In the year 1930, the people of Oregon amended the state constitution to authorize the creation of people's utility districts. Section 12, Article XI, Constitution. From that amendment we quote as follows:

"People's utility districts may be created of territory, contiguous or otherwise, within one or more counties, and may consist of an incorporated municipality, or municipalities, with or without unincorporated territory, for the purpose of supplying water for domestic and municipal purposes; for the development of water power and/or electric energy; and for the distribution, disposal and sale of water, water power and electric energy. * * *

"The legislative assembly shall and the people may provide any legislation, that may be necessary,

in addition to existing laws, to carry out the provisions of this section.''

The legislature accordingly, in 1931, enacted a statute providing for the creation, organization, government and operation of people's utility districts. (Laws of 1931, ch. 279.) The statute required that a majority of the legal voters voting in each municipality and parcel of territory should vote in favor of the formation of the district before it could be created. This requirement was modified in 1933 (Laws of 1933, ch. 272), as follows:

"* * * Petitions asking that an election be held to determine whether or not a district shall be created shall set forth and particularly describe the boundaries of the proposed peoples' utility district, and shall state that in the event the people within any one or more municipalities or parcels of territory within said proposed district shall vote against the formation of such district, then, and in that event that portion of said district which voted in favor of the organization of a peoples' utility district, may, upon the recommendation of the commission, be organized into a peoples' utility district. * * * When a majority of all votes cast at an election within the boundaries of any proposed district, to determine whether or not such district shall be formed, shall be in favor of forming such district, said district shall be created; provided, that when any municipality and/or separate parcel of territory voting at said election shall cast a majority vote against the formation of such district, said municipality and/or separate parcel of territory shall not be included in the formation of any district that may be formed as a result of said election; provided further, that if the commission shall so recommend, the municipalities and/or separate parcels of territory which voted in favor of the formation of the proposed district at said election may be formed

into a district with reformed boundaries in agreement with the recommendation of the commission; * * *".

Sec. 114-203, O. C. L. A.

Further amendments to the law followed in 1937 and 1939, but those are not material to the present discussion.

In the Ravlin case this court, upon the authority of *Clam River Electric Co. v. Public Service Commission*, 225 Wis. 198, 274 N. W. 140, held, in effect, that the affirmative over-all vote in the election resulted in the creation of a district as prayed for in the petition. The majority vote in that portion of the proposed district which comprised the municipality of Hood River having been against the formation of the district as proposed, we held further that, by their vote, the people "consented" to the formation of a district with reformed boundaries, eliminating Hood River.

The Wisconsin statute provided as follows:

"In case said district as finally constituted shall comprise a smaller area than originally proposed, because of the failure of one or more municipalities to approve the district at said election, then within ten days following * * * such commission shall file its approval or disapproval of said district as created by said election * * *. In such case, from and after such filing by the commission the creation and incorporation of such district shall be deemed complete, or the district shall be deemed dissolved, as the approval or disapproval of the commission shall determine * * *."

Under the Wisconsin act, before the election, a hearing is required to be held by the Commission upon the question of the feasibility or nonfeasibility of the proposed district. Any municipality voting unfavorably

is eliminated from the district, and the Commission is required to approve or disapprove the district after any portion thereof has been so eliminated.

Under our act, an investigation is conducted by the Hydroelectric Commission prior to the election, upon the question of whether or not the proposed district is "just, and conducive to the public welfare". Then, if any municipality or parcel of territory within the proposed district shall eliminate itself by an unfavorable vote, but the over-all vote is favorable, the statute provides that, if the Commission shall so recommend, that part of the district which voted favorably may be formed into a district with reformed boundaries in agreement with the Commission's recommendation.

We held in *In re Tillamook People's Utility District,* 160 Or. 530, 86 P. (2d) 460, that if, upon a hearing by the Commission prior to the election upon the formation of a proposed district, it should recommend changes in the boundaries, such recommendation should be binding upon the sponsors of the petition, and in the Ravlin case we held that there was no distinction between the character of the act of the Commission in recommending changes in the boundaries of the proposed district prior to the election and its act, after the election, in recommending or approving the district after elimination of the municipalities or portions of territory which voted in the negative. In both instances the action of the Commission is purely administrative.

People's utility districts are formed under authority of the provisions of chapter 2 of Title 114, O. C. L. A. The procedure to be followed requires the filing, with the Hydroelectric Commission, of a preliminary petition or petitions signed by five per cent or more of

the qualified voters within the boundaries of the proposed district. If the Commission finds that the petition complies with the provisions of the law, it is required to set a time and place for a hearing thereon and to publish notice thereof. At the hearing the Commission makes a report of its preliminary investigation, and hears evidence for or against the formation of the proposed district. Thereafter, it makes to the sponsors of the petition its final report on the advisability of creating the district. If the sponsors then desire to proceed, they may, within two years from the date of the Commission's final report, file with the Commission a voters' final petition, whereupon the Commission must call an election upon the question of whether or not a district shall be created as prayed for in the petition. If the result of the election is against the formation of the district, the sponsors may, within two years after such election, without filing any further preliminary or final petitions, request the Commission to call another election. Due notice is required. Up to the point of the holding of the second election, it appears that the proceedings under consideration here were regular, and complied with the provisions of the statute.

The final petitions requested the calling of an election on the question of whether or not there should be created a people's utility district "to be composed of the separate parcel of territory hereinafter described, and all of the municipalities of The Dalles, Dufur and Mosier hereinbefore described," the necessary description being furnished. The ballot which was submitted to the voters read as follows:

"Shall that portion of Wasco County, State of Oregon, described as follows: [description here omitted], be incorporated in a Utility District to

be known as the Northern Wasco County Peoples' Utility District under the provisions of Title LVI, Chapter XXXIV, Oregon Code 1935 Supplement, and amendments thereto, as prayed for in the voters' final petitions filed with the Hydroelectric Commission on —————''.

The appellants take the position that, by this ballot, there was submitted to the legal voters only one question, namely: whether or not a people's utility district should be formed of the territory described in the final petitions. The district, on the other hand, maintains that the question was rather whether or not ''a'' district should be formed, either as described in the final petitions, or with boundaries reformed as the Commission might afterwards recommend. In the Ravlin case, this court held that the district's contention in this respect was well founded. We based our opinion upon the fact that, in the notice of election and in the ballot, the question was stated as being upon the formation of a district ''as prayed for in the voters' final petitions'', and that such reference gave sufficient notice to the voters that they were voting not only upon the question as stated specifically in the ballot, but also upon any and all questions that might be included in the final petitions, whether stated in the ballot or not. We said:

''* * * In the light of the record, can it reasonably be contended that the voters did not consent to the establishment of the district in the instant case?''

The voters of the municipalities of Dufur and Mosier having voted against the formation of the proposed district, by force of the statute they were eliminated therefrom.

The petitions in this case, as required by section 114-203, O. C. L. A., contained the following statement:

"that in the event the people within any one or more municipalities or parcels of territory within said proposed district shall vote against the formation of such district, then, and in that event that portion of said district which voted in favor of the organization of a peoples' utility district, may, upon the recommendation of the commission, be organized into a peoples' utility district."

■ The appellants contend that the procedure adopted by the Commission in this case had the effect of compelling the voter, if he voted at all, to vote blindly upon more than one question; that is to say, upon the formation of the district with boundaries as proposed in the final petitions, and also, (in the event that a majority of the electors in any municipality or unincorporated territory in the proposed district should vote against the proposal, but the over-all vote was favorable), upon the formation of a district comprising the remainder of the proposed district, if the Commission should so recommend.

It is generally held that it is against the spirit of popular elections to require the voters to express their choice upon more than one proposition combined into one question.

"The rule in most jurisdictions is that independent or unrelated propositions or questions referred to the electors must be submitted separately so that each may stand or fall upon its own merits; two such questions cannot be submitted together, to stand or fall upon a single vote. * * *" 18 Am. Jur., Elections, sec. 181.

"* * * but two or more separate and distinct propositions cannot be combined into one and

submitted to the voters as a single question at an election so as to have one expression of the voter answer all of them." 29 C. J. S., Elections, sec. 79.

■ The view which we have expressed above, that the people voted only upon the question of whether or. not a district should be formed as prayed for in the final petitions, and that an election which resulted in the elimination of portions of the proposed district, although the over-all vote was favorable, brought into play the function of the Commission to which we have referred as the second permissible procedure, simplifies the problem. We are of the opinion that the question which was submitted to the people was single and the ballot was lawful.

The theory which we adopted in the Ravlin case, that, because of the caveat which was inserted in the petition respecting the possibility of the formation of a district with reformed boundaries, the voters thereby "consented" to the formation of such district with reformed boundaries, has been subjected to criticism. We think that such criticism is warranted. Many persons voted in the election who had not signed the petition. Moreover, under that view, the question submitted would not have been single, and hence the election would have been unlawful.

■ In the Ravlin case we said further that, since it was impractical for the legislature to determine the boundaries of utility districts by general laws, and beyond its power to do so by special enactments, it conferred authority upon the Commission acting as an administrative body to determine whether the *creation* of a district with reformed boundaries would be feasible and conducive to the public welfare. We think that that statement should be modified. It was not the

power to *create* a district with reformed boundaries which was given to the Commission by the legislature, but rather the power to determine, as a matter of fact, whether or not that portion of the proposed district which had voted favorably might be organized or formed into a district which would be "just, and conducive to the public welfare".

In *Clam River Electric Co. v. Public Service Commission*, supra, the Wisconsin court laid down the rule of law, which is uniformly supported by the authorities, that the final decision of the Commission upon the feasibility of the district as created by the vote of the people should be based upon some sufficient standard contained in the statute to guide the Commission in making its determination. See *Van Winkle v. Fred Meyer, Inc.,* 151 Or. 455, 49 P. (2d) 1140. Such standard was not found in the particular section of the Wisconsin act which delegated to the Commission the power to approve or disapprove the district as created with reformed boundaries, but was imported by the court from another section of the act. In the Ravlin case this court, in the same manner, imported the standard of "just, and conducive to the public welfare" into that section of the statute which gives the Commission authority to recommend or approve the district with reformed boundaries, from that section giving it authority to recommend changes in the boundaries of the district as proposed in the preliminary petitions. On reconsideration, we feel that such importation was proper. The function of the Commission in both instances being the same, the same standard should be implied, and may reasonably be imported. (For a statement showing the character and extent of the investigation which the Commission makes into the

question of the advisability of forming a proposed district, see Fifth Annual Report, Hydroelectric Commission of Oregon, 1935-1936.)

As to the adequacy of such a standard, it is to be observed that similar ones have been upheld, as for example, "the public health or safety" (*Jacobson v. Massachusetts*, 197, U. S. 11, 49 L. Ed. 643, 25 S. Ct. 358, 3 Ann. Cas. 765) ; "unfair methods of competition" (*Federal Trade Commission v. Raladam Co.*, 283 U. S. 643, 75 L. Ed. 1324, 51 S. Ct. 587, 79 A. L. R. 1191) ; and "as public convenience, interest or necessity requires" (*Federal Radio Commission v. Nelson Brothers*, 289, U. S. 266, 77 L. Ed. 1166, 53 S. Ct. 627, 89 A. L. R. 406.).

 Appellants say that ineligible territory was improperly included within the district, referring to a portion of section 114-203, O. C. L. A., which reads:

> " * * * No entire township * * * shall be included in the formation of any district, unless such township shall contain not less than ten qualified voters, and no portion of any township in excess of six sections shall be included, unless said portion shall contain a proportionate number of said qualified voters. * * *"

Assuming that the district did unlawfully include ineligible territory of the description mentioned above, that fact would not invalidate its legal existence. *State v. Bay City*, 65 Or. 124, 131 P. 1038; *Smith v. Hurlburt*, 108 Or. 690, 217 P. 1093; *In re Tillamook People's Utility District*, 160 Or. 530, 543-4, 86 P. (2d) 460. The owners of such lands had due opportunity to protest to the Commission against their inclusion, and, having failed to avail themselves thereof, they cannot now be heard to complain. *In re Tillamook People's Utility District*, supra.

■ Another point raised by the appellants is that, in recommending the formation of a district with reformed boundaries without having held any hearing on the question of whether or not the formation of such district would be "just, and conducive to the public welfare", and without having made any findings, the Commission acted arbitrarily. In our opinion, the point is not well taken. The law does not require a hearing to be held by the Commission in this connection, and its validity is not affected by such omission. *In re Tillamook People's Utility District,* supra; *In re Bonds of Orosi Public Utility District,* 196 Cal. 43, 235 P. 1004, 1011. Moreover, the Commission had already held a hearing which sufficiently advised it in the premises, as its adequate final report shows.

■ Section 114-202, subd. 16, O. C. L. A., defines sponsors as "a committee, association, corporation or municipality, as the case may be". The appellants contend that neither the preliminary nor the final petitions contained the name of a sponsor or identified a sponsor in any way, except in so far as the signers of the petitions might be considered as sponsors. They suggest that the signers of the petitions, or their representatives, are the only persons qualified to request a second election. While we concede that the language of the statute is somewhat vague in this respect, we are disposed to give it a liberal construction, and hold that the legislature meant by the term "sponsors" to refer to the persons, associations or municipalities who were responsible for originating the petitions. Public petitions are not usually "sponsored" by the petitioners themselves, or at least by all of them. There must always be some person or organization actively moving the petition forward, securing signa-

tures thereon, and finally presenting it to the proper authority—sponsoring it, in short. However, it would seem that the minutes or other records of the Commission's proceedings should disclose who were the sponsors of the petitions, and in this instance they do so.

We are of the opinion that the proceedings under consideration were regular and valid, and that the Northern Wasco County Peoples' Utility District was thereby duly incorporated as a people's utility district under the constitution and laws of Oregon. The decree of the circuit court is affirmed, with costs.

---

BELT, J., concurs in the result:

The foundation of the "People's Utility District Law" is in Ore. Const. Art. XI, Sec. 12, a constitutional amendment approved by vote of the people in 1930. This constitutional amendment provides that:

"People's utility districts may be *created* of territory, contiguous or otherwise, within one or more counties, and may consist of an incorporated municipality, or municipalities, with or without unincorporated territory, for the purpose of supplying water for domestic and municipal purposes; for the development of water power and/or electric energy; and for the distribution, disposal and sale of water, water power and electric energy. * * *" (Italics ours).

It was not self-executing as it contained a specific provision that:

"The legislative assembly shall and the people may provide any legislation, that may be necessary, in addition to existing laws, to carry out the provisions of this section."

Pursuant to this mandate of the people, the legislature, in 1931, enacted a broad and comprehensive utility act providing among other things the manner and method of creating people's utility districts and enumerating the powers thereof. In Sec. 12 of this original enactment it was provided that:

> "* * * * * Such districts shall not be formed unless a majority of the voters in both said municipality and in said parcel of territory shall vote in favor of the formation of said utility district."

Soon thereafter an attempt was made to create a people's utility district in Tillamook county. The over-all vote was favorable to the creation of the district but two of the small municipalities within the proposed district voted adversely. As a result of such adverse vote, the project was defeated by reason of the above statutory restriction.

The legislature, by Ch. 272, Laws of Oregon for 1933, remedied this defect in the utility law by eliminating the above-quoted part of Sec. 12 of the original act. The intention of the legislature to remove such restriction in the formation of utility districts was further evidenced in the 1933 amendment of Sec. 3 of the original act by adding thereto the following:

> "Petitions asking that an election be held to determine whether or not a district shall be created shall set forth and particularly describe the boundaries of the proposed peoples' utility district, and shall state that in the event the people within any one or more municipalities or parcels of territory within said proposed district shall vote against the formation of such district, then, and in that event, that portion of said district which voted in favor of the organization of a peoples' utility district, may, upon the recommendation of the

commission, be organized into a peoples' utility district. * * * * * * * When a majority of all votes cast at an election within the boundaries of any proposed district, to determine whether or not such district shall be formed, shall be in favor of forming such district, said district shall be created; provided, that when any municipality and/or separate parcel of territory voting at said election shall cast a majority vote against the formation of such district, said municipality and/or separate parcel of territory shall not be included in the formation of any district that may be formed as a result of said election; provided further, that if the commission shall so recommend, the municipalities and/or separate parcels of territory which voted in favor of the formation of the proposed district at said election may be formed into a district with reformed boundaries in agreement with the recommendation of the commission * * * * *."

The above has been codified as a part of § 114-203, O. C. L. A. The people's utility district law was amended in 1937 (Ch. 276, Laws of Oregon for 1937) and in 1939 (Ch. 387, Laws of Oregon for 1939) but no changes were made as to the formation of utility districts. It is significant that, in the recent legislature (1943), while the instant case was pending before this court for decision, Senate Bill No. 304 was introduced providing for an amendment of § 114-203, O. C. L. A., by striking therefrom the provisions of the 1933 amendment above set forth relative to the formation of utility districts. The effect of the proposed 1943 amendment would be to revive the original enactment of 1931 relative to the formation of people's utility districts. The bill failed to pass. The legislature thus refused to restrict the method provided for the formation of utility districts and thereby emascu-

late the people's utility district law. What the legislature has refused to do by statutory enactment, this court should not do by judicial construction.

An election on August 15, 1939, resulted in an over-all vote in favor of the creation of the Northern Wasco Peoples' Utility District. There was an adverse vote, however, in two municipalities, Dufur and Mosier, which were included in the proposed district. After excluding Dufur and Mosier, by reason of such adverse vote, it was deemed by the hydroelectric commission feasible and conducive to the public welfare that the district be created with reformed boundaries. The final report of the commission showed that the total users of electricity within the corporate limits of Dufur and Mosier constituted approximately seven per cent of the total users of electricity within the proposed district and that they used less than three per cent of the kilowatt hours sold within such area.

After the proclamation of the commission on August 22, 1939, declaring the district duly incorporated, the board of directors commenced to function; taxes were levied and collected; indebtedness incurred; and the people at an election authorized the board to issue and sell bonds aggregating $475,000, for the purpose of acquiring an electric distribution system. No objection was made to the validity of the organization of the district or to any of its activities until more than two years after it commenced to operate. When the district instituted this proceeding for the purpose of having a judicial determination of the validity of the bond issue above mentioned, the defendants— including the Pacific Power & Light Company, a private utility corporation in the business of selling and distributing electricity within the boundaries of the

proposed district—filed their answer challenging the validity of the district and asserting that all of its transactions are null and void.

Appellants do not contend that the district was not organized in compliance with the provisions of the statute. There is no objection to the form or regularity of the proceedings for the formation of the district or of the bond issue, based upon failure to follow the method provided therefor by the utility district law. Neither do appellants urge in their briefs that such act has been improperly construed by this court. Appellants' basic contention is that there can be no valid utility district created, notwithstanding a favorable over-all vote of the people, unless a majority of the voters in every municipality or "parcel of territory" included within the boundaries of the proposed district vote in favor of its formation. In support thereof, appellants rely chiefly upon the following propositions of law:

(1) Under Art. IV, Sec. 1a and Art. XI, Sec. 2, of the Constitution of Oregon, the power to create municipal corporations is lodged exclusively in the voters residing within the limits of the proposed district.

(2) The determination of boundaries of people's utility districts is a legislative function and cannot be delegated to any administrative board or agency. In other words, the power of determining boundaries of utility districts is vested only in the people who reside in and are voters of the proposed district.

(3) The hydroelectric commission has no power to create a public utility district under the provisions of Sec. 114-203, O. C. L. A., or any other provision of the utility district act, and the attempt by it to do so in the instant case is null and void.

(4) An administrative agency must base its action upon properly conducted hearings and after making findings.

It is conceded that all of the above propositions of law were decided adversely to appellants in *Ravlin, et al. v. Hood River Peoples' Utility District, et al.,* 165 Or. 490, 106 P. (2d) 157, a decision rendered by this court without dissent on October 8, 1940. There is not a single authority, involving the precise point under consideration, contrary to the Ravlin case. *Clam River Electric Co. v. Public Service Commission,* 225 Wis. 198, 274 N. W. 140, supports it. It is also in keeping with the opinion of the Attorney-General of this state (Opinion of Attorney-General, 1936-1938, p. 684), and the construction of the act by the hydroelectric commission for the past ten years.

As pointed out in the Ravlin case, it is wholly impracticable for the legislature to determine the boundaries of utility districts. Hence, the commission, with certain restrictions, was vested with discretion in determining the boundaries thereof. The use of the word "recommendation" is unfortunate, but when considered in the light of the context of the act, it clearly appears that the legislature must have intended it to be synonymous with "approval". If it has not been used in that sense, it is absolutely meaningless.

It is assumed by appellants—and there is some loose language in *In re People's Utility District,* 160 Or. 530, 86 P. (2d) 460, tending to sustain their contention—that a utility district is strictly a municipal corporation and, therefore, can be created only like cities subject to the Home Rule amendments of the constitution (Art. IV, Sec. 1a and Art. XI, Sec. 2, Const. Ore.). The above decision, however, when con-

sidered in its entirety, does not offer much comfort to appellants, as the court in such case said:

"The proceedings for the organization of the Tillamook People's Utility District were in conformity to the act providing for the creation and organization of such a district. Indeed, it would seem that the only way a municipality or quasi municipality, like the utility district under consideration, can be formed in the state of Oregon is under a general law, such as the People's Utility District Act. Art. XI, section 2, of the constitution of Oregon, provides that corporations shall be formed under general laws, but shall not be created by the legislative assembly by special laws, and that the legal voters of every city and town are granted power to enact and amend their municipal charter.

"Under the constitution of the state of Oregon, the legislature may enact general laws providing for the organization of municipal corporations, or the creation and organization of utility districts, and it may provide the conditions under which such municipality or quasi municipality may be created and leave to some officer or official body the duty of determining whether the prescribed terms and conditions exist, and, when found to exist, the law directs the creation of the municipality or utility district."

People's utility districts are quasi municipal corporations. While they have some of the attributes of a true municipal corporation, they have no specific charter and are created by a general legislative enactment as an agency of the state for some particular purpose: *Central Pacific Co. v. Ager,* 144 Or. 527, 25 P. (2d) 927; *Greig v. Owyhee Irr. Dist. et al.,* 102 Or. 265, 202 P. 222; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 41 L. Ed. 369, 17 S. Ct. 56; 14 C. J. 78. Utility districts are constituted by the legislature to exercise, in a prescribed area, a limited number of

corporate functions in order to effectuate a legislative policy, but they are lacking in many of the essential characteristics of true municipal corporations. Such districts are in the same classification as irrigation, drainage, and school districts, but not cities.

This court, in *Re Harper Irr. Dist.*, 108 Or. 598, 216 P. 1020, speaking through Mr. Justice McCourt, said:

> "It is within the power of the legislature to create an irrigation district, and in the act creating the same, describe the boundaries of the district, the water supply and irrigation system by which the land shall be irrigated, designate the land which will be benefited by such irrigation, and the method of calculating and apportioning such benefits, or it may provide that the formation of such irrigation district shall be accomplished by procedure before some designated tribunal, and vest such tribunal with jurisdiction and power to determine any or all of the questions of fact essential to the organization of the same: * * * *."

In 14 C. J. 94, the rule is thus stated:

> "Except in so far as they may be restrained by constitutional provisions, the legislatures of the several states, as the depositaries of the sovereign legislative power, have the inherent power to create corporations and to determine and prescribe the mode of incorporation, the purposes for which corporations shall be created, the powers which shall be conferred upon them, and the conditions under which they may be exercised."

In *School District No. 35 v. Holden*, 78 Or. 267, 151 P. 702, it was claimed that a change in the boundaries of a school district could be accomplished only through the initiative power described in Art. IV, § 1a, and Art. XI, § 2, of the Oregon Constitution, but the court held that the legislature, through general laws, could

provide for the creation of such quasi municipal corporations and that there was no infringement upon the constitution. If it is not an unlawful delegation of legislative authority to vest a boundary board with the power to change the boundaries of school districts, it is difficult to understand why such authority conferred upon a commission to change boundaries in public utility districts would be an improper delegation of a legislative function.

That such quasi municipal corporations can be created by general legislative enactments without transgressing the Home Rule Amendments of the constitution, see: *State v. Mehaffey* (Klamath Drainage District), 82 Or. 683, 162 P. 1068; *Rose v. Port of Portland,* 82 Or. 541, 162 P. 498; *School District No. 35 v. Holden,* supra; *Central Pacific v. Ager* (Klamath Irrigation District), 144 Or. 527, 25 P. (2d) 927; *Greig v. Owyhee Irr. Dist.,* supra. Even true municipal corporations, like cities, are not free from control by the legislature through general laws. As said in *Burton v. Gibbons,* 148 Or. 370, 36 P. (2d) 786:

"* * * the power of the legislature to enact a general law applicable alike to all cities is paramount and supreme over any conflicting charter provision or ordinance of any municipality, city or town. * * *" Citing numerous authorities from other jurisdictions.

Art. IV, Sec. 1a and Art. XI, Sec. 2, Const. Ore., so far as is material herein, provide:

Art. IV, Sec. 1a:

"* * * The initiative and referendum powers reserved to the people by the constitution, are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or

for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. * * *''

Art. XI, Sec. 2:

''Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the State of Oregon.''

The above constitutional amendments have no application to the organization of people's utility districts. Such quasi municipal corporations are brought into existence by legislative enactment under and by virtue of Art. XI, Sec. 12 of the constitution. The creation of public utility districts is specifically authorized by Art. XI, Sec. 12. The method of such creation is not provided therein, but there is a clear mandate that ''the legislative assembly *shall*'' enact the necessary laws to accomplish the purpose of the amendment. If Art. IV, Sec. 1a, and Art. XI, Sec. 2, are construed to prohibit the legislature from organizing public utility districts, then there will be the anomalous situation of a conflict of constitutional amendments. Having in mind the historical background of the Home Rule amendments and the evils sought to be remedied, it is reasonably certain that such amendments were never intended to restrict the organization of such quasi municipal corporations by the legislature.

Did the legislature abdicate or surrender its sovereign power by delegating to the hydroelectric commission the right, with certain restrictions, to determine the boundaries of a proposed district? Otherwise stated, has there been an unlawful delegation of a legislative function? This question was answered contrary to the contention of appellants in *In re People's Utility District,* supra, and in *Ravlin, et al. v. Hood River People's Utility District, et al.,* supra. True, in the first case, the determination of boundaries by the commission was before the election, but it was nevertheless a restriction upon the right of the people to create utility districts as the sponsors of the proposed district were bound to adopt the boundaries as approved or "recommended" by the commission, or abandon the project. If it was not an unlawful delegation of legislative authority—and the court so held— to permit the commission to determine the boundaries of a district before an election, how does it, on principle, become an unlawful delegation of such authority when the commission thus acts after an election? The commission in determining the boundaries of a proposed district, whether acting before or after an election, must be guided by the statutory standard of whether the creation of the district would be feasible or "conducive to the public welfare." Obviously, it is not practicable for the legislature to determine such matters and it is, therefore, necessary to confer authority upon some administrative agency.

That the standard fixed by the legislature for the guidance of the commission is sufficiently definite is settled by the overwhelming weight of modern authority: *Savage v. Martin,* 161 Or. 660, 91 P. (2d) 273, and numerous authorities cited therein; *Livesay v. DeArmond,* 131 Or. 563, 284 P. 166, 68 A. L. R. 422;

*Clam River Elec. Co. v. Public Service Commission,*
supra; 11 Am. Jur. (Constitutional law) 945, 960. The
hydroelectric commission in fixing boundaries was
not exercising a legislative function but merely doing
that which was necessary to accomplish the purpose of
the law enacted by the legislature.

Relative to the failure to conduct a hearing after
election or to make findings, it may be said that the
utility district law of this state does not so require.
In *In re People's Utility District,* supra, this court said:

> "Laws providing for the creation of municipal
> corporations need not make provisions for hearings
> on boundaries and benefits in order to be valid."

Where the statute does not require findings, none are
necessary: *Pacific States Box & Basket Co. v. White,*
296 U. S. 176, 80 L. Ed. 138, 56 S. Ct. 159, 101 A. L. R.
853. See 49 Harvard L. Rev. 827. The Wisconsin utility
law required findings *(Clam River Elec. Co. v. Public
Service Commission,* supra).

For these reasons I concur in the result of the well-
considered majority opinion affirming the decree of
the circuit court.