Argued March 17, affirmed March 26, petition for rehearing
denied April 22, 1970. Petition for review denied
by Supreme Court by opinion July 2, 1970
See later volume of Oregon Reports

# HORNER'S MARKET et al, *Appellants, v.* TRI-COUNTY METROPOLITAN TRANS-PORTATION DISTRICT et al, *Respondents.*

467 P2d 671

*Robert Y. Thornton,* Salem, argued the cause and filed the briefs for appellants.

*Clifford B. Alterman,* Portland, and *Carl N. Byers,* Salem, argued the cause for respondents. Carl N. Byers, Salem, filed the brief for respondents. With him on the brief were Kell & Alterman and Raymond M. Kell, Portland.

*John D. Mosser,* Portland, argued and filed a brief as amici curiae. With him on the brief were Donald J. Morgan, John R. Hay, Verne W. Newcomb and Jack B. Schwartz, Portland.

No appearance for Department of Revenue.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

The plaintiffs, who are business owners and employers in Clackamas and Washington counties, have appealed from dismissal of their class suit which sought injunction against levying and collecting an

employer payroll tax by defendants. The latter are the Tri-County Metropolitan Transportation District of Oregon and its Manager, and the Department of Revenue, State of Oregon, and its Director. The case was heard on demurrers and a stipulation of facts.

The District was duly formed on October 14, 1969, pursuant to Oregon Laws 1969, ch 643, encompassing Washington, Clackamas and Multnomah counties. The exhibits included with the stipulation of facts indicate that before the District had an opportunity to complete financial organization pursuant to its organic law (ch 643), Rose City Transit Co., the major mass transit system in the area, serving an area largely within the corporate boundaries of the City of Portland, became involved in labor and financial difficulties. These difficulties required the District to either take over the transit company or have it cease to operate. This would have left about 80 per cent of the population of the state's largest metropolitan area unserved by this mass transit system. The District took over the company on November 28, 1969.

Opportunity for federal aid and need for matching funds, operating revenues, and capital funds required immediate action if the District were to proceed under its purported legislative authority. Day-to-day operation was financed by fare-box income and bank loans. All matters in this statement of facts are before the court by reason of the demurrers and the stipulation of facts made in the lower court by the parties who stated that they "mutually desire the Court to pass upon all of the issues raised * * * in their pleadings." Upon oral arguments in this court, counsel agreed that the demurrers admit these facts.

Oregon Laws 1969, ch 643, § 23, authorizes the

board of the District to raise revenue and designates seven specific methods, any one or more of which may be used within the limits prescribed. One of these is "(7) Levy of a tax measured by employer payrolls under sections 34 and 35 of this Act," limited to 6/10 of 1 per cent of gross payrolls. The District board on December 1, 1969, proposed such a tax of ½ of 1 per cent on employer payrolls in the District (except those exempted). The board introduced an Ordinance, No. 2, imposing the tax and explained it on December 12; a public hearing was held on December 18, and on the same date adopted it. As permitted by ch 643, Ordinance No. 2 was made immediately effective by the inclusion of an emergency clause which recites the facts constituting the emergency. The State Department of Revenue is designated as the collecting agency, pursuant to ch 643.

The District's demurrer to the complaint on grounds of no cause of suit stated was sustained and when plaintiffs refused to plead further the suit was dismissed. From that judgment plaintiffs appealed. Amici curiae, representing litigants who have other suits pending in lower courts, filed a brief in this court.

The amici curiae brief questions the jurisdiction of the court to entertain the suit. The challenge goes to the original jurisdiction of the circuit court from which this appeal was taken. Amici curiae contend that ORS 305.410(1) since its amendment in 1965 (Oregon Laws 1965, ch 6, § 2) provides that the Oregon Tax Court shall have exclusive jurisdiction of all questions arising under the tax laws of this state; therefore, this suit was commenced in a court without jurisdiction.

■ Several of the assignments of error relate to the constitutionality of the Act (ch 643) under which the District was formed; thus, the suit is broader in scope than an attack upon the tax alone, for it challenges the existence of the District. ORS 305.410 cannot be construed to give the Tax Court original jurisdiction in such a matter, although the same suit challenges a tax. The circuit court, being Oregon's court of original general jurisdiction, was, therefore, the proper tribunal in which to commence this suit, and the Court of Appeals, under Oregon Laws 1969, ch 198, § 1(2)(e), is the court having original appellate jurisdiction.

■ This is a suit in equity for an injunction. Equity, having taken jurisdiction, will decide all matters properly determinable in the suit.

Several of the constitutional challenges to the Act under which the District was created, and the District's actions relating to the tax, will be considered together.

Plaintiffs contend that the tax is discriminatory and therefore violates the equal protection provisions of the state and federal constitutions (Art I, § 20 of the Oregon Constitution, and Fourteenth Amendment, United States Constitution); the Act unconstitutionally delegates legislative authority to the District board; that the Act violates Art I, § 32 of the Oregon Constitution by imposing a tax without first submitting it to the voters of the District; that due process and home rule constitutional rights are denied;[1] and

---

[1] "Corporations may be formed under general laws, but shall not be created by the Legislative Assembly by special laws. The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter * * *." Oregon Constitution, Art XI, § 2.

that the levy of taxes by an appointive and unapportioned board denies equal protection under the Fourteenth Amendment to the United States Constitution.

In *Cook v. The Port of Portland,* 20 Or 580, 582, 27 P 263, 13 LRA 533 (1891), which settled the constitutionality of the Act by which the Port of Portland was created, Mr. Justice ROBERT S. BEAN quoted "LORD, J., in *Cline v. Greenwood,* 10 Or 241, 'Before a statute is declared void, in whole or in part, its repugnancy to the constitution ought to be clear and palpable and free from doubt. Every intendment must be given in favor of its constitutionality' * * *."

It is obvious that the legislature patterned the 1969 Act, particularly the part providing for appointment of the District board, after the Act of 1891 and later amendments thereto which created the Port of Portland. In that Act, and the one here questioned, powers of taxation are delegated to a board which is selected by the governor. The Port of Portland Act gives that board power to legislate by ordinance on internal affairs. ORS 778.250. Chapter 643, § 17, gives similar legislative powers to the District board.

■ After the Home Rule Amendment to the state constitution was adopted in 1906, serious question was again raised as to the constitutionality of amendments to the Port of Portland Act. In *Rose v. Port of Portland,* 82 Or 541, 572-74, 162 P 498 (1917), the court said:

"* * * The legislative assembly cannot *create* any corporation by a special law; but corporations of all kinds may be formed under appropriate general laws passed by the legislative assembly. * * * [I]t can enact a special law which amends the charter or act of incorporation of a municipality, other than a city or town. *The legislative*

*assembly can enact a general law affecting the charters or acts of incorporation of all * * * municipalities or districts * * *.*

"The construction adopted here * * * carries out and preserves the idea of home rule without * * * denying the power of legislation to the sovereign people of the state at large or their agent and representative, the legislative assembly where, in the words of the Constitution itself, 'the legislative authority of the state shall be vested.' "⊛ (Emphasis supplied.)

In *The George W. Elder*, 159 F 1005 (D Or 1908), cert den 232 US 722 (1914), United States District Court said:

"One other point * * * is that the board of control of the port of Portland is made appointive and self-perpetuating, rather than elective, and that, therefore, the entire act, with all the amendments is unconstitutional * * *. The Oregon Supreme Court seems to have settled the question otherwise (David v. Water Committee, supra; State v. George, 22 Or. 142, 29 Pac. 356, 16 L.R.A. 737, 29 Am. St. Rep. 586; Eddy v. Kincaid, 28 Or. 537, 41 Pac. 156, 655), and I feel bound by the adjudication." 159 F at 1008.

---

⊛ In State ex rel Heinig v. Milwaukie et al, 231 Or 473, 373 P2d 680 (1962), some of the language in *Rose* appears to have been qualified, but the language quoted in the text remains the law in Oregon. This is clear from the later decision in Hansell v. Douglass, 234 Or 315, 317-18, 380 P2d 977 (1963).

"Prior to the decision in the *Rose* case this court had given conflicting decisions construing the meaning of Article IV, § 1a and its companion amendment of 1906, Article XI, § 2. The latter was the Home Rule Amendment * * *." 234 Or at 317.

"The *Rose* case is * * * important here for its determination that the two amendments did not limit the power of the legislature to enact general legislation governing all municipalities and districts." 234 Or at 318.

See also, City of Woodburn v. Tax Com., 243 Or 633, 413 P2d 606 (1966).

The challenges under due process and equal protection provisions of the United States and state constitutions are broad in scope. Similar challenges have frequently been made in other cases. They usually relate to the organization and expansion of, or taxation by, municipal corporations. In *Hunter v. Pittsburgh,* 207 US 161, 28 S Ct 40, 52 L Ed 151 (1907), the Pennsylvania legislature had provided for the annexation by the larger city of Pittsburgh of the adjoining city of Allegheny, even though the majority of the voters of the smaller city voted against it. In the appeal to the United States Supreme Court it was contended that this was a violation of the sanctity-of-contract and due process provisions of the United States Constitution. Refusing to hold the legislative enactment unconstitutional, the Supreme Court said that the state legislature may:

"* * * expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible

for any unjust or oppressive exercise of it." 207 US at 178-79.

This sweeping pronouncement was followed in *Faitoute Co. v. Asbury Park,* 316 US 502, 509, 62 S Ct 1129, 86 L Ed 1629 (1942); *Pawhuska v. Pawhuska Oil Co.,* 250 US 394, 397-98, 39 S Ct 526, 63 L Ed 1054 (1919); *Trenton v. New Jersey,* 262 US 182, 186-87, 43 S Ct 534, 67 L Ed 937 (1923). In *Gomillion v. Lightfoot,* 364 US 339, 81 S Ct 125, 5 L Ed 2d 110 (1960), which turned principally upon the Fifteenth Amendment insuring rights of Negroes involved in a change of City of Tuskegee boundaries, the Supreme Court commented on the *Hunter* decision:

"* * * Thus, a correct reading of the seemingly unconfined dicta of *Hunter* and kindred cases is not that the State has plenary power to manipulate in every conceivable way, for every conceivable purpose, the affairs of its municipal corporations, but rather that the State's authority is unrestrained by the particular prohibitions of the Constitution considered in those cases." 364 US at 344.

"* * * [I]f one principle clearly emerges from the numerous decisions of this Court dealing with taxation it is that the Due Process Clause affords no immunity against mere inequalities in tax burdens, nor does it afford protection against their increase as an indirect consequence of a State's exercise of its political powers." 364 US at 343.

In 1962, the United States Supreme Court decided *Baker v. Carr,* 369 US 186, 82 S Ct 691, 7 L Ed 2d 663 (1962), the first of the one-man, one-vote decisions. Later cases have extended the application of the principle from elective positions in the legislature to elective positions in local units of government.

*Avery v. Midland County,* 390 US 474, 88 S Ct 1114, 20 L Ed 2d 45 (1968) (application to county government); and *Hadley v. The Junior College District of Kansas City,* 397 US 50, 90 S Ct 791, 25 LE2d 45 (1970). These cases have been urged as an indication that the United States Supreme Court will require an election authorizing the creation and selection of the board of such local units of government as that questioned in this case. We do not so understand those cases. In each of them the decision was carefully limited to elective officials. In *Sailors v. Board of Education,* 387 US 105, 87 S Ct 1549, 18 L Ed 2d 650 (1967), which did not extend the *Baker* doctrine, the Court said:

> "We find no constitutional reason why state or local officers of the non-legislative character involved here may not be chosen by the governor, by the legislature, or by some other appointive means rather than by an election * * *." 387 US at 108.

The Court noted that "the state legislatures have constitutional authority to experiment with new techniques" and said:

> "Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the Constitution to prevent experimentation * * *." 387 US at 110.

In *Avery,* the Court said:

> "This Court is aware of the immense pressures facing units of local government, and of the greatly varying problems with which they must deal * * *.

> "* * * [T]he Constitution and this Court are not roadblocks in the path of innovation, experiment, and development among units of local

government. We will not bar what Professor Wood has called 'the emergence of a new ideology and structure of public bodies, equipped with new capacities and motivations . . .' R. Wood. 1400 Governments, at 175 (1961)  *  *  *." 390 US at 485.

In *Hadley,* supra, the Court limited its decision to a situation where each qualified voter is given the same power in an election "open to all." The Court went on to say:

"* * * We have also held that where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not 'represent' the same number of people does not deny those people equal protection of the laws. *Sailors v. Bd. of Education,* 387 U.S. 105 (1967); cf. *Fortson v. Morris,* 385 U.S. 231 (1966). And a State may, in certain cases, limit the right to vote to a particular group or class of people.  *  *  * [Here the court quoted from *Sailors,* supra.] But once a state has decided to use the process of popular election and 'once the class of voters is chosen and their qualifications specified, we see no constitutional way by which equality of voting power may be evaded.' *Gray v. Sanders,* 372 U.S. 368, 381 (1963)." 397 US at 58-59.

Except as limited by *Gomillion v. Lightfoot,* supra, the general rule from *Hunter,* 207 US 161, supra, apparently still applies to the questions here involved, so far as application of the Fourteenth Amendment of the United States Constitution is concerned. Thus, in Texas it has been consistently held that a home-rule city may provide in its charter for extension of city limits with or without consent of the inhabitants of the annexed area, and there is no violation therein

of the Fourteenth Amendment: *Winship v. City of Corpus Christi,* 373 SW2d 844 (Tex Civ App 1963), cert den 379 US 646 (1965); *Forbes v. City of Houston,* 304 SW2d 542 (Tex Civ App 1957) cert den 357 US 905 (1958). In other jurisdictions we note similar rulings in a variety of cases: *Hazlet v. Gaunt,* 126 Colo 385, 250 P2d 188 (1952); *Mayor, &c. of Balto. v. State ex rel of the Board of Police of Balto.,* 15 Md 376, 74 Am Dec 572 (1860); *State v. West Duluth Land Co.,* 75 Minn 456, 78 NW 115 (1899); *State ex rel Bowen v. Kruegel,* 67 Wash2d 673, 409 P2d 458 (1965); *Wheeler School Dist. v. Hawley,* 18 Wash2d 37, 137 P2d 1010 (1943); *Burke v. Madison,* 17 Wis2d 623, 117 NW2d 580 (1962).

In *Ratigan v. Davis,* 175 Neb 416, 122 NW2d 12 (1963), appeal dismissed 375 US 394 (1964), a school district whose boundaries were co-extensive with those of the City of Omaha had voted a continuing tax. Later, the city's boundaries were extended, and, under Nebraska law, this automatically extended the school district's boundaries. The school tax was thus imposed upon the people in the annexed area without their consent or vote. They claimed that this was taxation without representation and unconstitutional. The Supreme Court of Nebraska rejected this challenge, saying that the maxim that there can be no taxation without representation does not mean "* * * that no person can be taxed unless, in the body that determines the amount of the tax to be levied, he is represented by someone for whom he has a right to vote * * *." 175 Neb at 419. In *Campbell v. Area Vocational School No. 2,* 183 Neb 318; 159 NW2d 817 (1968), challenging taxpayers claimed taxation levied by an

appointive school board was unconstitutional. The court said:

> "* * * It is within the power of the Legislature to provide for the administration of school districts by appointive rather than elective boards and to authorize such an appointive board to levy taxes * * *." 183 Neb at 324.

Two recent cases struck down delegations of legislative authority in similar acts. However, they are distinguishable on their particular facts. *In re City of Fond du Lac,* 42 Wis2d 323, 166 NW2d 225 (1969), was a case in which an act delegated to the judiciary a determination of when a metropolitan sewer district should be formed. The court held, on grounds of separation of powers, that this was an unconstitutional delegation of power to the judiciary. In *Four County Dist. v. Commissioners,* 149 Colo 284, 369 P2d 67 (1962), the legislature attempted by statute to create, in an area including the city and county of Denver, a four-county district to collect a tax for the purpose of purchasing capital improvements for all of the local governments in the four counties. The statute was held unconstitutional in face of a particular city home-rule provision of Colorado which gave the city and county of Denver exclusive authority over *"all its local and municipal matters."* This was construed as exclusive because by its terms it supersedes "any law of the state in conflict."

As already noted, the Port of Portland was created by a special legislative enactment, which, under *Rose v. Port of Portland,* supra, has been continued. The port's boundaries were extended by about one-third of the total area of Multnomah County in Oregon Laws 1963, ch 124, without the opportunity of a vote in the expansion area.

In *Wasco County P.U.D. v. Kelly,* 171 Or 691, 137 P2d 295 (1943), the word "municipality" as used in the Oregon Constitution, Art XI, § 2, was held to include such quasi-municipal corporations as utility districts, ports and other governmental agencies such as that created under ch 643. In *Wasco* the court said:

> "We think that the argument that a people's utility district can be formed only by the vote of the people of the district is unsound. * * * The power to create a corporation is still a legislative function, and the only inhibition upon the legislature in this respect is that it cannot create any corporation by a special law.

> "The legislature may, however, provide by general laws for the formation of corporations of all kinds, including municipalities and quasi-municipalities. In enacting such a general law, there is no constitutional provision compelling the legislature to frame the law so that the formation of a municipality other than a city or town shall be dependent upon the affirmative vote of the people of the district proposed to be incorporated. Unless restricted by the constitution, the legislature still possesses full and untrammeled legislative powers, and it cannot be questioned that, although it may not create any corporation by special law, nevertheless it may, by a general law, either delegate to the people themselves the right to vote upon the question of whether or not a district shall be incorporated as a municipality, or provide that proceedings may be instituted before some tribunal or board, which, upon finding and certifying the existence of a required state of facts, may, by virtue of the statute, certify or proclaim that the proposed municipality has been duly formed * * *.

> "* * * * *

> "* * * [I]t is not a delegation of the legislative function to make laws, for the legislature to

pass a general law providing for the incorporation of municipal corporations, fixing the conditions upon which they may be created, and imposing upon some officer or official body the duty of determining whether such conditions exist. 11 Am. Jur., Constitutional Law, section 236; *Rowe v. Ray,* 120 Neb. 118, 231 N.W. 689, 70 A.L.R. 1056, 1060.

"The method adopted by the legislature in the present instance was a combination of the two permissible procedures to which we have referred * * *." *Wasco County P.U.D. v. Kelly,* supra, 171 Or at 699-700.

The court then stated that the first of these two permissible procedures was the delegation to the legal voters of the question of whether such a district should be formed "* * * not because the people had an absolute right to do so in the exercise of home rule * * * but simply because that is one of the permissible procedures in the premises * * *." The other part of the plan in that case, it was pointed out, was that if part of the district voted unfavorably and part voted favorably upon the formation of the district, then the authority was delegated to a commission to decide whether the part which had voted favorably should alone be formed into a district. The guideline given to the commission in deciding this question was whether such an area might be organized and formed into a district which would be "just, and conducive to the public welfare." (The guideline of the statute in *Wasco*.) The commission having determined and declared by this guideline that the area, excluding that which voted against being included, should be formed into a district, the part of the act providing for the creation of the district was called into play. The court specifically held that the guideline or standard mentioned above and other similar

ones such as "the public health or safety," "as public convenience, interest or necessity required" were adequate standards. The court also said that the validity of the commission's action was not affected by a failure to have a hearing on the question of whether the formation of the district with restricted boundaries was "just, and conducive to the public welfare."

In *Multnomah County v. Luihn et al*, 180 Or 528, 178 P2d 159 (1947), the authority of the Multnomah County Welfare Commission to set the amount of a tax was questioned. The court struck down the act, saying that there was no standard whatever for the guidance of the commission and that the commission was delegated unrestricted determination of the gross amount it deemed necessary for the tax. However, the court said that "The legislature may delegate its legislative authority, in this connection, to municipal corporations, for the purpose of carrying out the ends for which such corporations, as political subdivisions of the state, are organized," and said that there are "circumstances under which there may be delegated to an administrative officer, board or tribunal some aspects of the taxing process, if, in making such delegation, the legislature retains sufficient and proper control over those aspects which are not delegable, and if a sufficient guide or standard is laid down by the legislature for the guidance of the administrative officials." The court also said: "* * * Having made a law, the legislature may delegate to some administrative body the power to determine the existence of a state of facts upon which the operation of the law depends [citing cases] * * *." 180 Or at 541.

In *Padberg, West et al v. Martin et al*, 225 Or 135, 138, 357 P2d 255 (1960), the court said:

"* * * There can be no doubt of the constitu-

tional power of the legislature to create, abolish or alter school districts, with or without a vote of the people within the area involved."

*School Dist. No. 68 v. Hoskins et al,* 194 Or 301, 240 P2d 949 (1952), holds the same, and states that the legislature may delegate the same powers to a board or commission, which may or may not be from the districts involved. *Philippi v. Board of Education,* 245 Or 446, 422 P2d 265 (1967), reiterates the same rules.

We conclude that the District involved here can be formed under a general act of the legislature, that ch 643 is such a general act, and further, that a vote in the area is not required, either for formation of the District or the levy of a tax by its board. The guidelines contained in the Act for formation of the District were sufficient:

"Section 3. (1) The governing body of the most populous city * * * may * * * propose creation of a mass transit district, if that city has a local transit system and if the governing body finds that area-wide mass transit needs cannot be met by local transit operation."

The guidelines for and limitations upon the District board as to the levying of the tax were detailed and sufficient. These appear in Sections 23, 34 and 35 of the Act.

Section 3 of ch 643 also can be viewed as providing that the governing body simply finds a fact situation exists, which in turn brings the Act into play. Several of the cases we have reviewed, including Oregon cases, approve the delegation of authority to a board or other official body to find a fact or facts

which will trigger the creation or expansion of a municipality.

> " 'A law otherwise unobjectionable is not invalid simply because power is given to some local officials * * * to determine the existence of a fact upon which it shall go into effect in a given locality * * *.' " *State v. Auer,* 197 Wis 284, 292, 221 NW 860 (1928).

We see no obstacle in Art I, § 32, Oregon Constitution:

> "No tax * * * shall be imposed without the consent of the people or their representatives in the Legislative Assembly * * *."

All of the people in the district were represented in the legislature. See *Ratigan v. Davis,* 175 Neb 416, supra.

■ Plaintiffs contend that the levy of the tax by an unapportioned body without a vote denied equal protection under the Fourteenth Amendment to the United States Constitution. We think what we have previously said meets this challenge. In addition, Section 4(2) of ch 643 provides:

> "* * * In appointing directors, * * * the Governor shall endeavor to assure representation of the most populous city, other cities and unincorporated territory in the proposed district proportionate to their respective populations."

Plaintiffs do not assert the governor violated his duty in this respect. We presume he faithfully performed it. There is no substance to the contention that the board is unapportioned.

Plaintiffs urge that placing the major tax burden on one group of taxpayers—employers—denies them equal protection of the law. A few classes of employ-

ers, such as insurance businesses and banks, are exempt under other legislative acts, ORS 731.840(4) and ORS 317.065, and others under interpretations of the tax laws by the Department of Revenue. Many cases can be cited on this general subject. Often quoted language rejecting such contentions is found in *Carmichael v. So. Coal Co.*, 301 US 495, 509, 57 S Ct 868, 81 L Ed 1245 (1937), repeated and followed in *Garbade and Boynton v. City of Portland*, 188 Or 158, 191, 214 P2d 1000 (1950), which upheld a business license tax based on gross income:

> " '* * * It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. (Citing cases.) This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. [Citing 12 United States cases.]

> "* * * A legislature is not bound to tax every member of a class or none. It may make distinctions of degree, having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [Citing five United States cases.]

> "* * * In the absence of such a record [a complete catalogue of reasons why a legislature acted] courts cannot assume that its action was capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."

The *Garbade* decision is in point in the instant case. The part of the Portland charter tested there contained a legislative grant of authority under a special 1903 legislative charter which predated the Home Rule Amendment to the Oregon Constitution. Special Laws of Oregon 1903, Art IV, § 73, subparagraph 21. (Art XI, § 2, the Home Rule Amendment for cities, was adopted in 1906.) The District's authority tested here is also a legislative grant of authority.

The mere fact that only one group, employers, is taxed does not necessarily mean, as plaintiffs contend, that the burden of that tax is upon those alone who are singled out by it. As pointed out in Cooley, Taxation 3403, 3406-07, § 1695 (4th ed, 1924):

"* * * A vast number of subjects are sometimes selected for taxation, because it is supposed justice requires it, when, had the same burden been laid upon a few, it would have been quite as just, quite as equally distributed, and the tax collected with greater economy * * *.

"It is no objection to a tax on a business that it operates indirectly as a tax on the consumer. That may perhaps be the very reason why it has been deemed desirable to levy it."

Plaintiffs contend that there are employers in some parts of Clackamas and Washington counties who will receive no benefit from the mass transit system; hence they cannot be taxed therefor. We cannot find that the designation of the geographical area selected under the legislative act is unreasonable. All in the area may receive direct or indirect benefits, now or in the future. One or more groups will derive greater benefit than others; but it is highly improbable that any single group will receive no benefit. The same

reasoning supported the Act creating the Port of Portland. *Cook v. Port of Portland,* 20 Or 580, supra; see also *The Geo. W. Elder,* 159 F 1005, supra.

■ Plaintiffs contend that the emergency clause was unconstitutionally made a part of the ordinance.

Art IX, § 1a, Oregon Constitution declares:

"*  *  * The *Legislative Assembly* shall not declare an emergency in any act regulating taxation or exemption." (Emphasis supplied.)

This provision and the referendum provision are in separate articles of the Oregon Constitution. Its effect is to prevent any revenue measure adopted by the legislature from becoming effective before the referendum can be invoked.

As previously noted, the City of Portland's authority to levy business license taxes is derived from its legislative charter of 1903. Authority conferred in such special legislative enactments survived the Home Rule Amendments. *In re Application of Boalt,* 123 Or 1, 260 P 1004 (1927); *Grayson; Heer v. State,* 249 Or 92, 436 P2d 261 (1968). Cities have, where emergencies existed, used the emergency clause on revenue measures authorized by legislative acts. An example was the revenue measure attacked in *Safeway Stores v. Portland,* 149 Or 581, 42 P2d 162 (1935). The court there declared that the ordinance violated no provision of the state constitution. After that decision, in *Garbade,* supra, the court said:

"*  *  * This section [Art IX, § 1a] refers only to the state legislative assembly and has no relevancy in respect to municipal legislative bodies *  *  * [citing cases]." 188 Or at 164.

■ Plaintiffs contend the tax violates constitutional guarantees of uniformity of taxation.

"The uniformity exacted in the imposition of an excise tax is geographical, not intrinsic * * *." *Garbade,* supra. 188 Or at 192.

Based upon our previous discussion and the statement quoted above, we conclude that the tax challenged here meets the test of uniformity.

Plaintiffs contend the tax was levied contrary to the requirements of the local budget law and Art XI, § 11 (limiting annual increase in taxes), Oregon Constitution.

In *Garbade,* supra, 188 Or at 188, the court said:

"In our opinion § 11, Article XI of the constitution applies only to property taxes * * *."

The stipulation of facts shows that the District board has taken preliminary steps to comply with the requirements of the local budget law, and that it adopted a six months' budget in its effort to do so.

■ ORS 294.326, a part of the local budget law, provides:

"(1) Except as provided in subsections (2) and (3) of this section, it is unlawful for any municipal corporation *to expend money* or to levy a tax in any year upon property subject to taxation unless [it] * * * has complied [with the local budget law] * * *." (Emphasis supplied.)

The prohibition against levying a property tax is irrelevant here. The section makes it illegal "to expend money" without compliance with the local budget law. The plaintiffs in this case seek an injunction against the imposition and collection of the excise tax, not the expenditure of money. We find no language in the

local budget law (ORS 294.305–294.555) which requires the adoption of a budget before levying or collecting an excise tax.

■ Plaintiffs contend that the title to the legislative Act failed to state that the Act authorizes the imposition of taxes and for this reason it is in violation of Art IV, § 20, Oregon Constitution. The title is:

"AN ACT Relating to mass transit districts; and providing penalties."

Cases are legion, including several cited above, in which such broad titles have been held to properly describe an act that embraces only one subject or "matters properly connected therewith" as required by Art IV, § 20, Oregon Constitution. For example, in *Elder,* supra, the court said:

"* * * [T]he next act following the port of Portland act, [is] 'an act to incorporate the City of Portland.' This is all there appears of the title, notwithstanding the municipality is empowered, through its common council, to assess and levy taxes, to grant licenses, to prevent and remove nuisances * * * [etc.]. * * * All these * * * are always considered to be embraced by the one central subject—the incorporation of a city * * *." 159 F at 1006.

■ The plaintiffs contend that ch 643 unconstitutionally delegates legislative powers to the United States Bureau of the Budget. Art I, § 21, Oregon Constitution, provides that no law shall be passed "the taking effect of which shall be made to depend upon any authority * * *." Section 2 of ch 643 provides:

"As provided by this Act, a mass transit district may be created in any standard metropolitan statistical area for the purpose of providing a mass transit system for the people of the district. The

territorial jurisdiction of the district shall include all territory within the geographic boundaries of every Oregon county in that standard metropolitan statistical area."

A standard metropolitan statistical area is defined as "an area designated and published by the United States Bureau of the Budget as a standard metropolitan statistical area." Oregon Laws 1969, ch 643, § 1(4).

The plaintiffs assert that this delegates to the United States Bureau of the Budget the determination of the boundaries of a district.

The Bureau of the Budget does not decide whether certain numbers and density of population occur in a particular area. It merely uses those facts, under certain criteria, to designate the area as a "standard metropolitan statistical area." Exhibit 4, published in 1967 and containing such designations, is in the stipulation of facts. It shows that on the 1967 list there were three such areas in Oregon, including the one in question, at the time the Act was adopted. The designation makes a convenient and logical device for the legislature to use in enacting guidelines for those to whom it delegates authority to act. If the area is on the list in existence at time of passage of the act, the use of it is not an unconstitutional delegation of legislative authority.

> "Statutes adopting existing Federal rules, regulations, or statutes, are valid, but attempts to adopt future Federal rules, regulations, or statutes, are unconstitutional and void. [Citing 11 cases.]"
> "Subsequent changes do not invalidate past adopted Federal statutes, regulations, or rules. 27 Va L Rev 700." *State ex rel Kirschner v. Urquhart,* 50 Wash2d 131, 137, 310 P2d 261 (1957).

*Hillman v. North. Wasco Co. PUD,* 213 Or 264, 284, 323 P2d 664 (1958).

We conclude that Oregon Laws 1969, ch 643, is valid, the formation of the District complied with the Act, and that the District's Ordinance No. 2 levying the tax is valid.

Affirmed.