Argued March 23, affirmed May 17, reconsideration denied June 16, petition for review denied July 13, 1976

KELLY et al, *Appellants,*
*v.*
SILVER et al, *Respondents.*
(No. 43909, CA 5107)

549 P2d 1134

*C. S. Emmons,* Albany, argued the cause for appellants. With him on the brief were Emmons, Kyle, Kropp & Kryger, Albany.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent Health Division. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

No appearance by respondent City of Sweet Home.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LANGTRY, J.

**LANGTRY, J.**

This appeal challenges a judgment of the circuit court in a declaratory judgment action which affirmed action of the administrator of the state Health Division, requiring annexation, for public health reasons, of an area to the City of Sweet Home.

Plaintiffs are 177 residents of a territory proposed to be annexed to the city pursuant to the provisions of ORS 222.850 through 222.915. Numerous of the plaintiffs are obviously spouses of other plaintiffs. ORS 222.850 through 222.915 provides, in addition to other standard statutory annexation procedures in ORS 222.010 to 222.750, a procedure for the annexation to cities of territories (which are otherwise eligible for annexation) because of conditions within the territory to be annexed that are a danger to public health. As distinguished from other usual methods of annexation this procedure requires annexation without the consent or vote of the people in the territory. Under this procedure the administrator of the state Health Division is authorized, when a petition is filed alleging such a health condition exists, to hold a hearing, find facts and, if the facts conform to the statutory requirements, order annexation. The city is then required, under the procedures set out in the statutes, to annex the territory. After the petition is filed, the city preliminarily submits plans to demonstrate to the administrator whether the city can provide facilities which will alleviate the health problems. Such plans usually involve the installation of sewage collection and treatment systems or a water system. At bar, the primary purpose was to provide a sewage collection and treatment system.

The Act constituting ORS 222.850 through 222.915 was originally enacted as Oregon Laws 1967, ch 624. It was amended by Oregon Laws 1973, ch 637, principally to redefine administrative responsibility for action contemplated by the Act, and again more extensively amended by Oregon Laws 1975, ch 639. The

[ 443 ]

instant case was instituted and tried under the Act as it was amended in 1973, thus, our review necessarily will be based upon the Act as it then existed.

The facts are not in dispute. The original petition was filed with the Division in early 1974. The hearing required was by a hearing officer in the area affected on March 21, 1974. Notice of the same was duly given. Facts found by the hearing officer and signed by the administrator (thus approved in the effective order) include the following.

There are approximately 900 living and commercial units within the territory, which is very roughly 14,400 feet long and 4,800 feet wide, lying contiguous to the east city boundary of Sweet Home, on the upriver side of the city, located on the southerly side of the South Santiam River. Approximately 225 of the units were surveyed and an exhibit in the record demonstrates that these surveyed units were a large sample of the whole, scattered at random about the entire territory proposed to be annexed. We are satisfied this forms the basis for an opinion that the sample surveyed is representative of the whole. Of the 225 specific locations, sewage disposal at 98 of the individual properties, mostly residential, was inadequate—usually the findings show that raw or inadequately treated sewage was being discharged from them directly to the surface of the ground. In one case it ran from the house into a 55-gallon oil drum and from there into a pit. Several of them had open-pit privies. The predominant drainage of the area is into the river above the city's domestic water intake site on the same river. On the basis of the sample it is reasonable to conclude that between 40 and 50 percent of the area was inadequately sewered, and that the condition existed over the entire area except one. That one is denominated Green River Estates which is a developed unit, by itself, along one edge of the entire territory which was adequately sewered and which the adminis-

trator excluded from the territory pursuant to the provisions of ORS 222.880(4):

> "If the administrator determines that a danger to public health exists because of conditions within only part of the area proposed to be annexed, or that such conditions could be removed or alleviated in only part of the area by the sanitary, water or other facilities ordinarily provided by incorporated cities, the administrator may reduce the boundaries of the area to that part of the area that presents a danger or in which the conditions can be removed or alleviated * * *."[1]

The action of the administrator contained the juris-

---

[1] Other parts of the statutes which have a principal bearing upon the questions involved are set out in this note. Parts of the statutes not substantially bearing upon the controversy are omitted in the interest of saving space:

"The hearing shall be for the sole purpose of determining whether a danger to public health exists due to conditions in the territory and whether such conditions could be removed or alleviated by sanitary, water or other facilities ordinarily provided by incorporated cities. It may be conducted by one or more members of the division or by one or more members of the division's staff to whom authority to conduct such a hearing may be delegated. It shall proceed in accordance with rules which may be established by the division. Any resident of the territory proposed to be annexed or of the city may be heard. At the conclusion of the hearing, the person conducting the hearing shall prepare and submit to the division written findings of fact and his recommendations based thereon. The written findings shall include the results of the investigation, written statements or documents bearing on the purpose of the hearings, and other evidence brought out at the hearing." ORS 222.875.

"(1) Within 90 days following the hearing, the administrator shall, along with other related documents submitted by the Environmental Quality Commission, review the findings and recommendations of the person conducting the hearing. If he finds no danger to public health exists because of conditions within the territory, or that such a danger does exists [sic] but that the conditions causing it could not be removed or alleviated by the provision of sanitary, water or other facilities ordinarily provided by incorporated cities, he shall issue an order terminating the proceedings under ORS 222.850 to 222.915 with reference to the territory for which annexation is proposed.

"(2) If the administrator finds that a danger to public health exists because of conditions within the territory, and that such conditions could be removed or alleviated by putting the plan into operation in accordance with the specifications and time schedule proposed, he shall file a certified copy of his findings with the city.

"(3) Within 15 days after the filing of a finding in accordance with subsection (2) of this section any person residing in the territory pro-

dictional findings under ORS 222.880(2) (*see* note 1) that danger to public health exists by reason of conditions in the territory, and that such conditions can be removed or alleviated by putting the city's plan into operation.

Immediately after the administrator had taken action on the findings, the plaintiffs filed this declaratory judgment proceeding in the circuit court, thus bypassing the administrative appellate procedures set up in the Act. The sole ground for the circuit court action is the contention that the Act is unconstitutional and cannot stand. Plaintiffs assign error (1) in that the circuit court failed to declare the statutes unconstitutional and, in the alternative, (2) in that the circuit court did not require the administrator to make findings as to the adequacy of sewage disposal facilities of each and all of the parcels of property within the territory and eliminate those which have adequate sewage facilities.

(1) The constitutional challenge falls under three headings: (a) that the statutes violate the equal-protection-of-the-laws provision of the Oregon Con-

posed to be annexed may petition for a hearing before the administrator. If a petition is received the administrator shall hear the petitioner and shall affirm, amend or reverse his previous finding.

"* * * * *." ORS 222.880.

"(1) Within 30 days after the filing with the city under ORS 222.880 of a finding of the administrator that conditions dangerous to public health exist, any resident of the territory proposed to be annexed or the city, as a municipal corporation acting through its governing body, may appeal the finding to the circuit court of the county in which a major portion of the territory is located. The administrator and the city, or the persons who, under ORS 222.850 to 222.915, initiated the hearing before the administrator, shall be joined as defendants.

"* * * * *." ORS 222.895.

Other subsections provide for the manner in which the circuit court shall hear the appeal and other following sections of the Act provide for passage by the city of the ordinance proclaiming the annexation, etc. Another section provides for residents and local health departments as well as the city to have authority to initiate the proceeding. The original petition in this case was signed and filed by 16 residents of the territory involved, who thus initiated the proceeding.

[ 446 ]

stitution, Art I, § 20; (b) that the same constitutional provision is contravened because only residents of the area to be annexed are entitled to challenge or administratively appeal the administrator's actions, and owners of the property therein who are not residents are thus denied such right; and (c) that there is an unlawful delegation of legislative power to the administrator in contravention of Oregon Constitution, Art I, § 21, which provides that no law shall be passed, the effectiveness of which is dependent upon any authority except that provided in the constitution, and Art IV, § 1, which provides that the legislative power is vested in the legislative assembly.

■ (a and c) With reference to the first equal protection argument, the plaintiffs principally ground their argument upon the provisions of ORS 222.880(4), quoted above, in that the administrator is given raw discretionary power to remove property from the proposed territory, there being no guidelines set forth therein. Some complaint is also made with reference to lack of guidelines in other parts of the Act.

In *Warren v. Marion County,* 222 Or 307, 314-15, 353 P2d 257 (1960), where the Marion County building code was being challenged, the Supreme Court said:

> "As pointed out in Davis on Administrative Law, the important consideration is not whether the statute delegating the power expresses *standards,* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action * * *.
>
> "* * * * *
>
> "We believe that the appeals procedure required by ORS 215.108(2) provided a sufficient safeguard to persons wishing to contest administrative action in the enforcement of the code. Plaintiff has not mentioned the standards which he thinks would satisfy the requirement for an adequate statute. We doubt that any standards which he could suggest for inclusion in the statute would make any clearer the scope of the delegated power or contribute materially to the protection of a citizen against unwarranted administrative action. We hold

[ 447 ]

that ORS 215.108 constitutes a valid delegation of legislative power."

At bar, in view of this precedent, we think the statute as it existed after the 1973 amendment provided sufficient safeguards by way of appeals as is demonstrated by the parts of the statutes which are quoted in note 1.

This part of plaintiffs' argument is closely allied to that concerning the delegation of legislative authority under the (c) part of this assignment of error and we will treat that with this part of the assignment.

The defendants have pointed out in their brief that in *Horner's Market v. Tri-County Trans.,* 2 Or App 288, 467 P2d 671, Sup Ct *review denied* 256 Or 124, 471 P2d 798 (1970), this court quoted at length from *Hunter v. Pittsburgh,* 207 US 161, 28 S Ct 40, 52 L Ed 151 (1907), concerning the broad power the legislature has to legislate the annexation of territories to cities or to consolidate or even eliminate cities. That power, of course, is limited in Oregon by the city home rule amendment, Oregon Constitution, Art XI, § 2. We think more in point in Oregon with reference to the question at bar is *Wasco County P.U.D. v. Kelly,* 171 Or 691, 137 P2d 295 (1943), also strongly relied upon in *Horner's Market v. Tri-County Trans.,* supra. There, the Supreme Court said:

" '* * * * * *

" '* * * Unless restricted by the constitution, the legislature still possesses full and untrammeled legislative powers, and it cannot be questioned that, although it may not create any corporation by special law, nevertheless it may, by a general law, either delegate to the people themselves the right to vote upon the question of whether or not a district shall be incorporated as a municipality, *or provide that proceedings may be instituted before some tribunal or board, which, upon finding and certifying the existence of a required state of facts, may, by virtue of the statute, certify or proclaim that the proposed municipality has been duly formed * * *.*

" '* * * * * *

" '* * * [I]t is not a delegation of the legislative func-

[ 448 ]

tion to make laws, for the legislature to pass a general law providing for the incorporation of municipal corporations, fixing the conditions upon which they may be created, *and imposing upon some officer or official body the duty of determining whether such conditions exist.* 11 Am. Jur., Constitutional Law, section 236; *Rowe v. Ray,* 120 Neb. 118, 231 N.W. 689, 70 A.L.R. 1056, 1060.

"'* * * * *.'" (Emphasis supplied.) 2 Or App at 302-03.

In *Horner's Market,* we went on to say with reference to *Wasco County P.U.D. v. Kelly,* supra:

"* * * The other part of the plan in that case, it was pointed out, was that if part of the district voted unfavorably and part voted favorably upon the formation of the district, then the authority was delegated to a commission to decide whether the part which had voted favorably should alone be formed into a district. *The guideline given to the commission in deciding this question was whether such an area might be organized and formed into a district which would be 'just, and conducive to the public welfare.'* (The guideline of the statute in *Wasco.*) The commission having determined and declared by this guideline that the area, excluding that which voted against being included, should be formed into a district, the part of the act providing for the creation of the district was called into play. *The court specifically held that the guideline or standard mentioned above and other similar ones such as 'the public health or safety,'* 'as public convenience, interest or necessity required' *were adequate standards.* The court also said that the validity of the commission's action was not affected by a failure to have a hearing on the question of whether the formation of the district with restricted boundaries was 'just, and conducive to the public welfare.'" (Emphasis supplied.) 2 Or App at 303-04.

This language is as applicable in the present case as it was in *Horner's Market.* Plaintiffs contend that the holding in *Schmidt v. City of Cornelius,* 211 Or 505, 316 P2d 511 (1957), is controlling in the situation at bar. There, a statute provided that an owner of land within a city, if the land had a certain area and lack of improvement, could have the land disconnected from

the city solely by the owner and the courts. The procedure was for the owner to file a complaint in the circuit court which, if it found the requirement fulfilled, must decree disconnection of the land. The Supreme Court held the statute unconstitutional, finding that this delegation of legislative power was in effect an amendment to the charter of the city by empowering a private individual at his sole option to initiate a judicial proceeding which upon proof of specified facts would result in mandatory action of the court that would amend the city charter. One of the reasons given for this holding was that it would violate the mandate of the Oregon Constitution which provides that no law shall be passed, the taking effect of which shall depend upon any authority except as provided in the constitution. The constitution, of course, requires legislation to be passed by the legislative branch of government. Under the home rule provision the legislative authority is the city council or city electors.

In urging this precedent upon us the plaintiffs overlook the fact that the court said also that there are cases in Oregon that hold that general legislation can invest cities "*with extramural powers which they could not otherwise exercise.* * * * *Here* [*that is, in this line of cases*] *the power is vested in a city and may be exercised by it simply by action of the city authorities* * * *.*" (Emphasis supplied.) 211 Or at 516-17. Cited as authority is *Spence v. Watson,* 182 Or 233, 186 P2d 785 (1947). In *Spence* the court said:

> "The conclusion is inescapable that the legislature has the authority to enact a law prescribing the procedure to be followed in determining whether any prescribed area outside of the corporate limits of * * * [a] city shall be annexed * * *." 182 Or at 238.

In *Schmidt,* after what we have quoted above, the court went on to say that statutes or constitutional provisions which authorize city councils or electors of cities to detach property (that is, to change city boundaries) are in a "class by themselves. * * * Such statutes are in aid of the home rule powers of cities, not in

[ 450 ]

derogation of such powers * * *." 211 Or at 518. The statutes which the plaintiffs challenge at bar are definitely in aid of the city home rule power and not in derogation thereof for they specifically provide in ORS 222.860 that the city legislative body "*may* adopt a resolution containing a proposal for annexation without vote or consent in the territory proposed to be annexed. The proposal *may* contain terms of annexation as provided in ORS 222.111 * * *." (Emphasis supplied.) ORS 222.111(2) provides for the usual manner in Oregon of submitting a question of annexation to the voters of the city *except* in those cases where that is unnecessary under ORS 222.120 which, in turn, provides for annexation without a vote in the city in certain specified situations including those existing under the Act in question in this case. In this regard it is interesting to note that in their brief plaintiffs concede that compelling reasons relating to public health are matters of statewide interest, citing 2 McQuillin, Municipal Corporations 175, § 4.99 (3d ed 1966).[2] For the reasons thus set out and for the reasons set out in the quotations from *Wasco County P.U.D. v. Kelly,* supra, we do not think the holding in *Schmidt v. City of Cornelius,* supra, is authority for holding the Act in question here unconstitutional.

■■ (b) The plaintiffs contend that, because in two different places the Act gives the right of administrative or judicial appeal only to residents of the area and not to owners who are not residents of the area, an unequal classification is made. *See* ORS 222.875 and 222.895(1). In this connection plaintiffs point out that in the 1975 revision of the Act this has been changed

---

[2]There are other situations where annexations of territory to cities may be accomplished and elections therefor are not contemplated. *See*, e.g., ORS 222.170 and the Local Boundary Commission Act, ORS ch 199. *See also Mar. Fire Dist. v. Mar. Polk Bndry*, 19 Or App 108, 526 P2d 1031, Sup Ct *review denied* (1974).

For relevant discussions of the legislature's authority to pass valid general legislation affecting cities, where the subject involves matters of statewide as distinguished from intramural interests, *see State ex rel Heinig v. Milwaukie,* 231 Or 473, 373 P2d 680 (1962), and *Allison v. Washington County,* 24 Or App 571, 548 P2d 188 (1976).

so that any person affected or aggrieved[3] by the action taken is entitled to appeal. This may be an indication that the legislature thought that the provision was unjust with reference to nonresident owners of property or that it thought it was unconstitutional with reference to them, or both. We might agree with both conclusions if a decision were necessary. However, we do not find the plaintiffs have standing to raise the question. The allegations of their complaint as well as the findings of fact that were made are that plaintiffs are all residents of the territory. No nonresident owners are therefore included among them. It is a well-established principle of law that plaintiffs may assert only their own legal rights and cannot rest their claim upon the legal rights of third parties. A recent case closely in point is *Rasmussen v. City of Lake Forest, Illinois,* 404 F Supp 148 (ND Ill ED 1975). On pp 154-55 the court said:

"The standing question presented by this case is whether the economic injury to plaintiffs places them in a position appropriate to vindicate the rights of third parties. Commenting generally on this matter the Supreme Court recently said:
" '. . . even when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on legal rights or interests of third parties. Without such limitations—closely related to Article III concerns but essentially matters of judicial self-governance—*the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions* and even though judicial intervention may be unnecessary to protect individual rights.' *Warth v. Seldin,* — U.S. ——, 95 S. Ct. 2197, 2205, 2206, 45

---

[3]Instead of setting out in detail the scope of the appeal to the circuit court from the mixed administrative and city council decision, as is done in the 1973 version of ORS 222.893, the 1975 amendment of that section provides that appeals shall be governed by the Administrative Procedures Act, ORS 183.480 to 183.500. ORS 183.480 gives the right of appeal to any person "affected or aggrieved" by the determination.

L.Ed. 2d 343 (1975) (citations omitted, emphasis added)."

We take particular note of the words from *Warth v. Seldin,* 422 US 490, 95 S Ct 2197, 45 L Ed 2d 343, 355 (1975), where the court said, "even though judicial intervention may be unnecessary to protect individual rights." The wisdom of this rule is well demonstrated in the present case for the legislature has changed the statute to give nonresident owners their individual rights.

■ (2) Plaintiffs contend that we should interpret the word "may" to mean "must" so that the administrator must look at every separately owned parcel of property in the territory and remove from the annexation territory each of those which presently have adequate septic tank service. If this were done it is obvious from the exhibit before us that there would be an area roughly 14,400 feet by 4,800 feet in which there would be intermittent areas that would be in the city and others that would be without the city. Boundaries would seriously lack symmetry with attendant uneconomic and disruptive difficulties in providing any kind of city services in the territory included. Territory left out by this process could—and the experience in the territory indicates it probably would—soon present the same health hazards that have brought about the present difficulties. We think it obvious that the legislature had no intention to produce such a result or a prime possibility thereof. In *Millersburg Dev. Corp. v. Mullen,* 14 Or App 614, 623, 514 P2d 367, Sup Ct *review denied* (1973), we said:

> "* * * [T]he determination of the boundaries of a city—a political subdivision of the state—transcends the individual interests of each parcel of property proposed to be located therein. It becomes a matter of general interest in the whole area—a matter of general policy."

What we have already quoted from *Wasco County* (with reference to use of the word "may") concerning legislative delegation of authority to the adminis-

trator to find certain facts and to determine boundaries based on those facts is also much in point.

Affirmed.