IN THE OREGON TAX COURT
REGULAR DIVISION

SCHWEITZER'S CASUAL WEAR, INC.,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4555)

Tim Schweitzer, shareholder of Plaintiff, filed a response for Plaintiff (taxpayer) *pro se.*

Wendy Sanderson, Assistant Attorney General, Department of Justice, Salem, filed the motion for Defendant (the department).

Decision for Defendant rendered July 2, 2002.

## HENRY C. BREITHAUPT, Judge.

This matter is before the court on Defendant Department of Revenue's (the department) Motion for Summary Judgment. The parties stipulate to the facts.

Plaintiff (taxpayer) is a business located in the city of Cottage Grove. A special election was held September 21, 1999, that resulted in the annexation of Cottage Grove into the Lane County Transit District (LTD). *See* Ballot Measure 20-23, City of Cottage Grove, Special Election (1999). As a result of that annexation, taxpayer must pay a tax in the amount of six-tenths of 1 percent of the wages paid to its employees, *i.e.*, a payroll tax. Taxpayer argues that the tax is unfair, comparing it to a previously existing inventory tax.

Because voting on Measure 20-23 was limited to the residents of Cottage Grove and taxpayer's shareholders do not live in Cottage Grove, taxpayer's preference against the tax was not reflected on that ballot.[1] On that basis, taxpayer contends that it is being subjected to "taxation without representation." In addition, taxpayer argues that the tax results in double taxation because mass-transit systems are federally subsidized and taxpayer's shareholders pay federal income taxes. Finally, taxpayer claims that because the tax is paid only by businesses, not residents, the tax is not uniform as required by Article I, section 32, of the Oregon Constitution.

### ISSUE

Was the LTD payroll tax properly assessed against taxpayer?

### ANALYSIS

The court has jurisdiction of this dispute regarding the LTD payroll tax under ORS 305.620.[2] Following are analyses of each of taxpayer's contentions.

---

[1] Business entities are not persons and therefore cannot vote in political elections. Or Const, Art II, § 2.

[2] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 1999.

*The Tax is Unfair*

Arguments based on the fairness of any taxing provision are relevant only in legislative debates regarding adoption, amendment, or repeal of the tax in question. Neither the Oregon statutes defining the authority of the LTD nor the Oregon or United States constitutions contain provisions authorizing this court to nullify a tax based on asserted unfairness unless the unfairness is also a violation of a constitutional provision.

■ Taxpayer points to the unfairness identified with a previous taxation of inventories in Oregon, and asserts by analogy, that the LTD tax is just as unfair. *See generally former* ORS 310.608 (1969), *renumbered as* ORS 307.410 (1983). As discussed in the oral argument on this matter, the analogy used by taxpayer indicates the answer to the argument. That is, to the extent that taxation of inventories was considered unfair, the persons believing that to be true presented their case to the Oregon legislature, which then adopted an exemption for inventories. *See* ORS 307.400 (1997), *amended by* Or Laws 2001, ch 753, § 12. Similarly here, the appropriate remedy for taxpayer's asserted unfairness lies with the legislature and not with the courts.

*The Tax Amounts to Taxation Without Representation*

Outside of its historical context, the phrase "taxation without representation" is often misinterpreted. It does not hold the meaning asserted by taxpayer. *See generally Ratigan v. Davis,* 175 Neb 416, 122 NW2d 12, 15 (1963) ("[The phrase does not mean] that no person can be taxed unless, in the body that determines the amount of the tax to be levied, he is represented by someone for whom he has a right to vote."). The American colonists used the phrase to assert that it is against the fundamentals of good government to raise a tax without the consent of a representative assembly. The colonists were not protesting that each individual colonist had been denied the ability to vote for such tax-imposing acts, *e.g.*, the Stamp Act, or that they were not provided the opportunity to vote for their representative, but that the British Parliament imposing such taxes included no colonial representative. *See generally* John Phillip Reid, *Constitutional History of the American Revolution* (1987).

█ Neither the Oregon Constitution nor the United States Constitution contain limitations requiring direct participation in the electoral process before a person or entity may be subjected to taxation. Indirectly, taxpayer's interests are represented in that we have a representative form of government, which provides for democratic accountability. Representatives of taxpayer's shareholders, customers, and employees consented to the tax at issue. Oregon legislators have authorized: (1) the creation of transit districts; (2) the procedure for changing district boundaries; (3) the governance of transit districts by directors appointed by the elected governor and confirmed by the Senate; and (4) the imposition of certain taxes for the purpose of supporting the operations of such transit districts. *See generally* ORS ch 267.

Taxpayer has provided the court with no authority and the court is aware of no authority that supports a finding that the LTD tax in question or ORS 267.385,[3] the state statute authorizing that tax, are unconstitutional because of the political processes relating to the inclusion of Cottage Grove within the transit district or the imposition of the tax. Indeed, transit district payroll taxes have been upheld against such a challenge, even where the creation of the transit district did not involve a popular election, unlike this case. *See Horner's Market v. Tri-County Trans.*, 2 Or App 288, 300-06, 467 P2d 671, *aff'd*, 256 Or 124, 471 P2d 798 (1970) (noting that although the tax at issue had not been submitted to the voters, the legislature that represented the people in the district had formed the district board and granted the board a limited authority to levy a tax).

## The Tax Amounts to Double Taxation

Taxpayer's assertion of "double taxation" as a limitation to the LTD payroll tax is similar to its "taxation without representation" argument. The power to tax is tempered only by limitations found in the wording of the Oregon or United States constitutions or valid state and federal statutes. However, taxpayer provides no citation to such authority prohibiting "double taxation."

---

[3] The department oversees collection of the tax pursuant to an agreement with the LTD under ORS 305.620.

■ Taxpayer appears to argue that because a transit district receives federal financial support derived from federal taxes, additional financial support through state or local taxation is somehow prohibited. From a practical perspective, a refutation to that argument is the example of the national highway system, which is built with state as well as federal funds. From a theoretical perspective, a refutation to that argument is the fact that the state and federal governments have dual-delegated sovereign powers and, absent specific constitutional limitations, each may act in the same arena without limiting the other. *See Seminole Tribe of Florida v. Florida*, 517 US 44, 150, 116 S Ct 1114, 134 L Ed 2d 252 (1996) (Souter, J., dissenting).

*The Tax Violates Principles of Uniformity*

■ Neither the Oregon Constitution nor the United States Constitution requires that taxes be imposed on all persons or entities within a jurisdiction. In the area of taxation, the legislature has the broadest possible discretion in making distinctions among groups of taxpayers, including distinctions such as rates and imposition of tax. Such classifications are constitutional so long as they are supported by any conceivable state of facts and are not made based on impermissible criteria, *e.g.*, race, religion, etc. Finally, there is no constitutional violation where the rate applied is uniform, even though the absolute amount of tax varies depending on the level of payrolls. Using a payroll tax on employers to fund transit district operations has been upheld against the challenge of uniformity. *See Horner's Market*, 2 Or App at 301. Now, therefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted, and the imposition of the employer payroll tax by Lane Transit District is affirmed. Costs and disbursements to Defendant.