Argued and submitted January 5, decision of Court of Appeals affirmed; judgment of circuit court reversed in part and affirmed in part, and case remanded to circuit court for further proceedings December 30, 2005

## SPRINGFIELD UTILITY BOARD,
acting for and on behalf of the
City of Springfield,
*Petitioner on Review,*

*v.*

## EMERALD PEOPLE'S UTILITY DISTRICT,
*Respondent on Review.*

## (CC 16-01-19121; CA A118530; SC S51305)

125 P3d 740

Peter R. Mersereau, of Mersereau & Shannon, LLP, Portland, argued the cause for petitioner on review. Thomas W. McPherson, of Mersereau & Shannon LLP, Portland, filed the briefs for petitioner on review.

Timothy J. Sercombe, of Preston Gates & Ellis, LLP, Portland, argued the cause for respondent on review. With him on the briefs was Carra L. Sahler.

John H. Hammond, Jr., of Berry, Elsner & Hammond, LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Municipal Electric Utilities.

Lori Irish Bauman, of Ater Wynne LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon People's Utility District Association, Inc.

CARSON, C. J.

## CARSON, C. J.

At issue in this declaratory judgment action is whether a city possesses authority to exclude a people's utility district (PUD) from providing electrical services in an area newly annexed to the city when the Public Utility Commission of Oregon (PUC)[1] previously had allocated that area to the PUD as part of the PUD's exclusive service territory. For the reasons that follow, we conclude that a city does not possess such authority.

Springfield Utility Board (the board), acting on behalf of the City of Springfield (the city), adopted an ordinance that purported to exclude Emerald People's Utility District (Emerald) from serving an area newly annexed to the city. Much of the annexed area fell within an area that the PUC previously had allocated to Emerald as part of Emerald's exclusive service territory. The board filed a declaratory judgment action against Emerald, seeking a determination that the board was the exclusive provider of electrical services in the annexed area. Emerald counterclaimed, seeking a determination that the board could not exclude Emerald from the newly annexed area. On competing motions for summary judgment, the trial court ruled that the board had authority under ORS 221.420(2)(a)[2] to exclude Emerald from providing electrical services in the annexed area, and it entered a declaratory judgment in favor of the board.

---

[1] At the time of the 1983 territorial allocation that is at issue in this case, ORS chapter 756 conferred a single commissioner, the Public Utility Commissioner of Oregon, with the authority to regulate public utilities in Oregon. In 1985, the legislature amended ORS chapter 756 to create the current three-member body, the Public Utility Commission of Oregon. *See* Or Laws 1985, ch 834, § 2 (so providing). That change has no effect upon our analysis in this case, and we use "PUC" in this opinion to refer to both the Public Utility Commissioner of Oregon and the Public Utility Commission of Oregon.

[2] ORS 221.420(2)(a) provides:

"Every city may:

"Determine by contract or prescribe by ordinance or otherwise, the terms and conditions, including payment of charges and fees, upon which any public utility, electric cooperative, people's utility district or heating company may be permitted to occupy the streets, highways or other public property within such city and exclude or eject any public utility or heating company therefrom."

Emerald appealed. The Court of Appeals reversed as to the part of the annexed area that fell within Emerald's allocated exclusive service territory, but affirmed as to the remainder of the annexed area. *Springfield Utility Board v. Emerald PUD*, 191 Or App 536, 84 P3d 167 (2004). We allowed the board's petition for review and, for the reasons that follow, now affirm the decision of the Court of Appeals.

## I. FACTS AND PROCEDURAL BACKGROUND

The following undisputed facts are taken from the opinion of the Court of Appeals and from the record. The board operates a municipal electric utility that was created in 1950 under the provisions of ORS chapter 225, following a voter-approved amendment to the Springfield city charter. That city charter also empowers the board to exercise the regulatory authority provided in ORS 221.420, discussed *post*.[3] The board has acted as the exclusive provider of residential electrical services within the city limits of Springfield since 1975.

Emerald is a PUD that was created by election in 1978 pursuant to Article XI, section 12, of the Oregon Constitution and the provisions of ORS chapter 261.[4] Emerald's political boundaries encompass mostly unincorporated parts of Lane County and, prior to the annexation at issue in this case, did not encompass any part of the city.

At the time of Emerald's creation in 1978, the PUC had allocated to Pacific Power & Light (PP&L) the exclusive right to provide electrical services to the area within Emerald's political boundaries. In 1983, Emerald purchased certain electric transmission and distribution facilities from PP&L that were either within or adjacent to Emerald's political boundaries. The PUC approved the sale of those facilities

---

[3] The city amended its charter in 2001, but did not alter the board's authority in any way that affects our analysis in this case.

[4] Article XI, section 12, was added to the Oregon Constitution in 1930 after the voters approved an initiative petition commonly known as the "Grange Amendment." *See Emerald PUD v. PP&L*, 302 Or 256, 258, 9 P2d 552 (1986) (discussing history of Article XI, section 12). That constitutional provision defines the powers of PUDs and directs the Legislative Assembly to enact legislation necessary to implement the provisions of the amendment. That implementing legislation now is found in ORS chapter 261. *See id.* (discussing that same history).

and issued an order transferring the allocation of that exclusive service territory from PP&L to Emerald. Emerald has acted as the exclusive provider of electrical services within that area since the PUC issued its 1983 allocation order.

The present dispute between the board and Emerald arose in 2000, after the city sought to have an undeveloped parcel of land annexed to the city to permit the development of a residential subdivision. Much of the area that the city sought to annex fell within the exclusive service territory that the PUC had allocated to Emerald in its 1983 order. In April 2000, in anticipation of the planned annexation, the board adopted an ordinance that purported to exercise the city's authority under ORS 221.420(2)(a) to exclude Emerald from the area to be annexed, including the part of that area that fell within Emerald's allocated exclusive service territory.

For its part, Emerald disputed the board's authority to exclude Emerald from its allocated exclusive service territory. Emerald also applied to the PUC for allocation of the additional right to act as the exclusive service provider for the part of the area to be annexed that fell outside the PUC's 1983 allocation order.[5] In addition, Emerald began to construct electric distribution facilities within the area to be annexed.

The Lane County Local Government Boundary Commission ultimately approved the annexation of the area at issue to the city on November 8, 2000. In October 2001, the board filed a declaratory judgment action against Emerald in Lane County Circuit Court, seeking a declaration that the board enjoyed the exclusive right to provide electrical services to the annexed area at issue. The board also sought an injunction prohibiting Emerald from providing electrical services in the annexed area. Emerald answered and filed a counterclaim for declaratory relief, seeking a judicial determination that the board could not exclude Emerald from the annexed area or extend the board's utility services into Emerald's allocated exclusive service territory.

---

[5] As the Court of Appeals noted, *Springfield Utility Board*, 191 Or App at 539 n 2, the appellate record contains no information about the result of Emerald's application to the PUC for expansion of Emerald's exclusive service territory.

Both parties moved for summary judgment. After hearing arguments relating to those motions, the trial court determined that the board had authority under ORS 221.420(2)(a) to exclude Emerald from the annexed area, including the part of that area that fell within Emerald's allocated exclusive service territory. Accordingly, the trial court entered a declaratory judgment in favor of the board, declaring the board to be the exclusive provider of electrical services to the entire annexed area at issue.

Emerald appealed. The Court of Appeals affirmed in part and reversed in part. *Springfield Utility Board,* 191 Or App 536. In doing so, that court concluded that the board had authority to exclude Emerald from the part of the annexed area that fell outside of Emerald's allocated exclusive service territory because, in the absence of a territorial allocation by the PUC, no statute limits a city's authority to adopt an ordinance excluding any competing utility providers from the city's boundaries. *Id.* at 551-52. As to the part of the annexed area that the PUC had allocated exclusively to Emerald, however, the Court of Appeals held that the territorial allocation statutes prohibited the city from excluding Emerald and serving the area itself. Specifically, after concluding that ORS 221.420 provided the sole basis of authority for a city to exclude a utility provider from an allocated exclusive service territory, the Court of Appeals held that ORS 221.420(2)(a) did not permit a city to exercise that power against a PUD. *Id.* at 551.

The board petitioned this court for review, challenging the Court of Appeals' conclusion that the board lacked authority to exclude Emerald and to extend its own utility services into the part of the annexed area that the PUC had allocated to Emerald as part of Emerald's exclusive service territory. As explained below, we agree with the Court of Appeals that the board lacked authority to override the PUC's territorial allocation to Emerald. Accordingly, we affirm the decision of the Court of Appeals.

## II. DISCUSSION

■ At the outset, we note that Emerald does not assign error to the Court of Appeals' holding that the board

possessed authority to exclude Emerald from the part of the annexed area that fell *outside* of Emerald's allocated exclusive service territory. Thus, the only question before us is whether the board, exercising the powers of the city, enjoys the authority to override the PUC's allocation to Emerald of the part of the annexed area that falls *within* Emerald's exclusive service territory.

A. *Statutory Background*

Before turning to the parties' arguments concerning that question, we first provide background relating to the territorial allocation statutes for electric and gas utilities.

The legislature enacted the territorial allocation statutes for gas and electric utilities, now codified at ORS 758.400 to 758.475, in 1961. Or Laws 1961, ch 691. Those statutes empower the PUC to allocate exclusive service territories to providers of electric and gas utility services under certain circumstances. *See* ORS 758.410 to 758.430 (prescribing procedure and requirements for allocation of service territory by contract between utility providers); *see also* ORS 758.435 to 758.445 (prescribing procedure and requirements for allocation of service territory by application). In conferring that authority upon the PUC, the legislature described twin goals underlying the territorial allocation statutes: the prevention of service duplication, and the promotion of adequate utility services throughout the state. Specifically, in a legislative policy statement now codified at ORS 758.405, the legislature explained:

> "The elimination and future prevention of duplication of utility facilities is a matter of state-wide concern; and in order to promote the efficient and economic use and development and the safety of operation of utility services while providing adequate and reasonable service to all territories and customers affected thereby, it is necessary to regulate in the manner provided in [ORS 758.400 to 758.475] all persons and entities providing utility services."

Or Laws 1961, ch 691, § 18.

As one mechanism to achieve those identified statutory objectives, ORS 758.450(2) mandates that, subject to

several exceptions inapplicable to this case,[6] "no other *person* shall offer, construct or extend utility service in or into" an area if the PUC has exercised its statutory authority to allocate that area to another utility provider as an exclusive service territory. ORS 758.450(2) (emphasis added). The word "person" is defined broadly in the territorial allocation statutes to include "individuals, firms, partnerships, corporations, associations, cooperatives and *municipalities*, or their agent, lessee, trustee or referee." ORS 758.400(2) (emphasis added).

The parties agree, as do we, that there is no question that the board qualifies as a "municipality" within the meaning of ORS 758.400(2) and, consequently, also qualifies as a "person" within the meaning of ORS 758.450(2). Thus, the territorial allocation statutes expressly apply to the board, and, at first glance, ORS 758.450(2) appears to prohibit the board from extending its own electric utility services into the part of the annexed area that the PUC had allocated to Emerald as part of Emerald's exclusive service territory. The parties' dispute raises the question whether, notwithstanding the PUC's territorial allocation to Emerald and the prohibition in ORS 758.450(2), the board has the authority to exclude Emerald and to extend its own electric utility services into the annexed area at issue. As explained below, we conclude that the answer to that question is no.

B. *The Scope of the Board's Authority*

The board makes several arguments in support of its position that the territorial allocation statutes in general,

***

[6] ORS 758.450(4) provides:

"The provisions of ORS 758.400 to 758.475 do not apply to any corporation, company, individual or association of individuals providing heat, light or power:

"(a) From any energy resource to fewer than 20 customers, if it began providing service to a customer prior to July 14, 1985;

"(b) From any energy resource to fewer than 20 residential customers so long as the corporation, company, individual or association of individuals serves only residential customers;

"(c) From solar or wind resources to any number of customers; or

"(d) From biogas, waste heat or geothermal resources for nonelectric generation purposes to any number of customers."

and ORS 758.450(2) in particular, do nothing to diminish the board's authority to exclude Emerald and to extend the board's own electric utility services into the part of the annexed area that the PUC had allocated to Emerald. First, the board contends that ORS 758.470 expressly provides that the territorial allocation statutes do not restrict certain powers that cities enjoyed before the enactment of those statutes, including the power of cities to issue franchises to gas and electric utility providers. *See* ORS 758.470(1) (ORS "758.400 to 758.475 shall not be construed or applied to restrict the powers granted to cities to issue franchises"). In that vein, the board argues that it may override the PUC's territorial allocation, even if no statute affirmatively permits it to do so, because the territorial allocation statutes do not restrict a city's authority to adopt an ordinance excluding any competing utility providers from the city's boundaries.[7] Second, even if that is not so, the board argues that ORS 221.420(2)(a) confers upon it affirmative authority to exclude Emerald from the city's boundaries and, having exercised that authority, it may extend its own electric utility services into the annexed area. Finally, the board argues that, if the territorial allocation statutes and ORS 221.420(2)(a) are not interpreted to permit the city to exclude Emerald and to operate as the exclusive electric utility provider within the city's boundaries, then those statutes impermissibly deprive the city of its authority under the "home rule" provisions of the Oregon Constitution[8] to elect its own political form. We address each of the board's arguments in turn below.

---

[7] The board claims that its authority arises from the "home rule" provisions of the Oregon Constitution. We address the board's "home rule" argument later in this opinion.

[8] The "home rule" provisions of the Oregon Constitution, now contained in Article XI, section 2, and Article IV, section 1(5), were adopted by initiative petition in 1906. *See LaGrande/Astoria v. PERB*, 281 Or 137, 140-41, 576 P2d 1204, *adh'd to on reh'g*, 284 Or 173, 586 P2d 765 (1978) (describing that same history). Article XI, section 2, provides, in part, that "[t]he legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon[.]" Article IV, section 1(5), provides that the initiative and referendum powers set out in Article IV, section 1, of the Oregon Constitution "further [are] reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district."

1. *The board's authority under the territorial allocation statutes*

We first consider whether the territorial allocation statutes restrict the board's ability to exercise its charter authority to exclude Emerald and to extend its own electric utility services into Emerald's allocated exclusive service territory.

The board recognizes, as it must, that the territorial allocation statutes expressly apply to cities and other municipalities, that those statutes provide a comprehensive framework for the allocation of exclusive service territories to utility providers, and that the PUC has sole authority under that statutory framework to approve such allocations. Pointing to certain municipal powers preserved under ORS 758.470[9]— including the power to issue franchises, the power of condemnation, and the power to provide utility services to other municipal installations—the board nevertheless contends that the territorial allocation statutes contemplate a city overriding PUC territorial allocation to another utility provider within the city's boundaries.

Of the municipal powers preserved under ORS 758.470 that the board invokes, we view only a city's power to issue franchises to utility providers as relevant to the question whether the board may override the PUC's allocation to Emerald of the annexed area at issue. ORS 758.470(1) provides that the territorial allocation statutes "shall not be construed or applied to restrict the powers granted to cities to issue franchises[.]" We conclude that, by referring to the franchise powers "granted to" cities, ORS 758.470(1) preserves a

---

[9] ORS 758.470 provides, in part:

"(1) ORS 758.015 and 758.400 to 758.475 shall not be construed or applied to restrict the powers granted to cities to issue franchises, or to restrict the exercise of the power of condemnation by a municipality; and when a municipality has condemned or otherwise acquired another person's equipment, plant or facilities for rendering utility service, it shall acquire all of the rights of the person whose property is condemned to serve the territory served by the acquired properties.

"(2) ORS 758.015 and 758.400 to 758.475 shall not be construed to restrict the right of a municipality to provide utility service for street lights, fire alarm systems, airports, buildings and other municipal installations regardless of their location."

city's franchise authority over utilities governed by the territorial allocation statutes to the extent that the legislature had granted cities that authority under ORS 221.420. The territorial allocation statutes therefore limit a city's franchise authority in this context to only the authority that ORS 221.420(2)(a) confers.

We, therefore, now turn our inquiry to that statute to determine whether the board is correct in asserting that ORS 221.420(2)(a) affirmatively authorizes a city to exclude a PUD from the city's boundaries.

2. *The board's authority under ORS 221.420*

The legislature has provided for statewide regulation of utilities other than railroads since 1911. *See* Or Laws 1911, ch 279 (providing same). ORS 221.420 has its origins in that 1911 utility legislation and, although it has evolved over time, that statute consistently has conferred cities with affirmative statutory authority to regulate utilities within their boundaries. *See* Or Laws 1911, ch 279, § 61 (defining municipal regulatory powers over utilities).

ORS 221.420(2)(a) provides:

"Every city may:

"Determine by contract or prescribe by ordinance or otherwise, the terms and conditions, including payment of charges and fees, upon which any public utility, electric cooperative, people's utility district or heating company may be permitted to occupy the streets, highways or other public property within such city *and exclude or eject any public utility* or heating company therefrom."

(Emphasis added.) As the Court of Appeals pointed out below, *Springfield Utility Board*, 191 Or App at 543-44, ORS 221.420(2)(a) sets out two different powers that cities enjoy to regulate utilities within their boundaries, namely, the power to prescribe the conditions and terms for occupation of a city's streets and other public property, and the power to eject or exclude another from a city's streets or other public property. ORS 221.420(2)(a) authorizes cities to exercise that first

power—that is, the power to prescribe the terms and conditions for occupation of a city's streets or other public property—against "any *public utility*, electric cooperative, *people's utility district* or heating company." (Emphasis added.) By contrast, ORS 221.420(2)(a) authorizes cities to exercise that second power—that is, the power to exclude or eject—only against "any *public utility* or heating company." (Emphasis added.)

By expressly referring to PUDs in describing a city's power to prescribe the terms and conditions for occupation of the city's streets or other public property, but omitting any such reference in describing a city's exclusion and ejection power, the text of ORS 221.420(2)(a) appears to limit a city's statutory franchise authority over PUDs only to the authority to prescribe the terms and conditions for occupation of the city's streets and other public property. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (in construing statutes, court generally presumes "use of a term in one section and not in another section of the same statute indicates a purposeful omission"). In advancing a contrary interpretation of ORS 221.420(2)(a), the board acknowledges that, if it has statutory authority to exclude Emerald, then Emerald must qualify as a "public utility" within the meaning of the second part of ORS 221.420(2)(a), notwithstanding the apparent distinction between a "public utility" and a "people's utility district" in the first part of that statute. For its part, Emerald disputes the notion that the term "public utility" in ORS 221.420(2)(a) includes PUDs. For the reasons explained below, we agree with Emerald.

ORS 221.420 defines the term "public utility" by adopting the statutory definition of that term in ORS 757.005, which also applies to the statutes governing state regulation of utilities. *See* ORS 221.420(1)(a) (providing that term "public utility" in ORS 221.420 has "the meaning for that term provided in ORS 757.005"); *see also* ORS 756.010(6) (incorporating definition of "public utility" in ORS 757.005 for ORS chapters 756, 757, 758, and 759). As relevant in this context, ORS 757.005 defines a "public utility" as:

"Any corporation, company, individual, association of individuals, or its lessees, trustees or receivers, that owns, operates, manages or controls all or a part of any plant or equipment in this state for the production, transmission, delivery or furnishing of heat, light, water or power, directly or indirectly to or for the public, whether or not such plant or equipment or part thereof is wholly within any town or city."

ORS 757.005(1)(a)(A).[10] That definition of a "public utility" is refined further by ORS 757.005(1)(b), which provides a list of entities that are excluded from that statutory term. One of the entities that ORS 757.005(1)(b) excludes from the statutory definition of "public utility" is "[a]ny plant owned or operated by a *municipality*." ORS 757.005(1)(b)(A) (emphasis added).

Applying those statutory definitions here, both parties agree that, if a PUD qualifies as a "municipality" within the meaning of ORS 757.005(1)(b)(A), then Emerald is excluded from the statutory definition of the term "public utility" under ORS 757.005(1)(a)(A) and, consequently, also is excluded from that term and from the city's exclusion authority under ORS 221.420(2)(a). Thus, to decide whether ORS 221.420(2)(a) authorizes the board to exclude Emerald, we must decide whether a PUD qualifies as a "municipality" in this context.

This court previously has observed that "the terms 'municipality' and 'municipalities' have no fixed meanings and that their meanings depend upon the context in which they are used." *Emerald PUD*, 302 Or at 265-66. Thus, in deciding whether PUDs are "municipalities" within the meaning of a particular statute, this court examines the specific statutory context at issue. In *Emerald PUD*, for example, this court concluded that PUDs do not qualify as

---

[10] ORS 757.005 also defines a "public utility" as:

"Any corporation, company, individual or association of individuals, which is party to an oral or written agreement for the payment by a public utility, for service, managerial construction, engineering or financing fees, and having an affiliated interest with the public utility."

ORS 757.005(1)(a)(B). Both parties agree, as do we, that the statutory definition of a "public utility" contained in ORS 757.005(1)(a)(B) is inapplicable to this case.

"municipalities" within the meaning of ORS 543.610 because the legislature had enacted that statute together with Oregon Laws 1931, chapter 279,[11] which distinguished between municipalities and PUDs. 302 Or at 266-68. In *Wasco County P.U.D. v. Kelly*, 171 Or 691, 698-99, 137 P2d 295 (1943), by contrast, this court concluded that PUDs were municipalities within the meaning of *former* Article IV, section 1a, of the Oregon Constitution, based upon the purposes and powers of such districts. *See also Cent. Lincoln P.U.D. v. State Tax Com.*, 221 Or 398, 408, 351 P2d 694 (1960) (describing PUDs as "quasi-municipal corporation[s]").

The statutory definition of "municipality" set out in ORS 756.010(4) generally controls the meaning of that term in ORS 757.005(1)(b)(A). *See* ORS 756.010(4) (providing definition of term "municipality" for ORS chapters 756, 757, 758, and 759 "except as otherwise specifically provided or unless the context requires otherwise"). ORS 756.010(4) defines a "municipality" to include "any city, municipal corporation or quasi-municipal corporation." According to Emerald, a PUD is a "municipality" under that definition and, thus, is excluded from the statutory term "public utility" under both ORS 757.005(1)(a)(A) and ORS 221.420(2)(a).

As the Court of Appeals observed below, *Springfield Utility Board*, 191 Or App at 550, the relevant context for determining whether a PUD is "municipality" under ORS 756.010(4) is the statutory framework for state regulation of utilities set out in ORS chapters 756, 757, and 758.[12] Examining those statutes as a whole, the board acknowledges, and we agree, that a PUD clearly qualifies as a "municipality" that is excluded from the statutory term "public utility" in that context. ORS 758.505, for example, expressly distinguishes between "public utilities," which are subject to the PUC's rate and service regulatory authority under ORS chapter 757, and PUDs, which have the authority to set their own rates and establish their own standards of service under

[11] Oregon Laws 1931, chapter 279, provided for the creation and establishment of PUDs to implement Article XI, section 12. *See* 339 Or at 634 n 4 (discussing history of that constitutional provision). As noted, that legislation now is codified in ORS chapter 261.

[12] The statutory definition of "municipality" set out in ORS 756.010(4) also applies to ORS chapter 759, which relates to telecommunication utility regulation.

ORS chapter 261. *Compare* ORS 758.505(7) (defining "public utility" as "a utility regulated by the commission under ORS chapter 757") *with* ORS 758.505(6) (classifying PUDs as "non-regulated utilit[ies]"). Thus, if that same distinction also applies to ORS 221.420(2)(a), then the board lacks statutory authority to exclude Emerald from its allocated exclusive service territory.

The board first seeks to avoid that result by arguing that, rather than applying the broad definition of "municipality" under ORS 756.010(4) to decide whether a PUD is excluded from the statutory term "public utility," this court should apply the narrower definition of "municipality" that is contained in ORS 221.420 itself. ORS 221.420(1)(d) defines a "municipality" for purposes of that statute as "any town, city or other municipal government wherein property of the public utility is located." Applying that definition to ORS 757.005(1)(b)(A), the board contends that Emerald is not a "municipality" that is excluded from the statutory term "public utility" as that term applies to ORS 221.420(2)(a).

As did the Court of Appeals below, *Springfield Utility Board*, 191 Or App at 548, we reject the board's suggestion that we can import the definition of "municipality" from ORS 221.420(1)(d) to determine the meaning of "public utility" in ORS 757.005(1)(b)(A). As the Court of Appeals pointed out, the definition of "municipality" in ORS 221.420(1)(d) serves only to define what entities have authority to exercise the powers set out in that statute. In addition, by incorporating the definition of "public utility" in ORS 757.005 without any qualification, ORS 221.420(1)(a) directs us to give the term "public utility" in ORS 221.420 the same meaning that that term possesses under the statutes providing for state regulation of utilities. That direction is reinforced further by the fact that, as described above, the distinction between a "public utility" and a "people's utility district" in the text of ORS 221.420(2)(a) is consistent with the distinction also made between those entities by the statutes providing for state regulation of utilities.

In arguing that the term "public utility" in ORS 221.420 includes PUDs, the board also relies upon ORS 221.415, the legislative policy statement that accompanied

the addition of the words "people's utility districts" to various provisions in ORS chapter 221 in 1987. *See* Or Laws 1987, ch 245 (adding both provisions). ORS 221.415 provides:

> "Recognizing the independent basis of legislative authority granted to cities in this state by municipal charters, the Legislative Assembly intends by ORS 221.415, 221.420, 221.450 and 261.305 to *reaffirm* the authority of cities to regulate use of municipally owned rights of way and to impose charges upon publicly owned suppliers of electrical energy, as well as privately owned suppliers for the use of such rights of way."

(Emphasis added.)

The board contends that the legislature's use of the word "reaffirm" in that statute reveals that cities already had the authority to exercise all the powers in ORS 221.420 against PUDs even before that statute had listed PUDs specifically. We think that the board reads too much into that word. In that regard, we point out that ORS 221.415 also "reaffirm[ed]" the city's authority under ORS 221.450 to collect privilege taxes from PUDs, despite the fact that ORS 221.450 previously had authorized cities to collect those taxes only from "privately owned public utilit[ies]." *See* ORS 221.450 (1985) (so providing). In addition, ORS 221.415 says nothing about the authority of cities to exclude utility providers and, instead, is consistent with the addition of the words "people's utility district" only to the first part of ORS 221.420(2)(a). We conclude, therefore, that ORS 221.420(2)(a) does not provide the board with authority to exclude Emerald from the territory allocated to Emerald by the PUC.

3. *The "home rule" provisions of the Oregon Constitution*

Having concluded that the territorial allocation statutes limit a city's authority to exclude a utility provider from an allocated exclusive service territory only to the authority provided under ORS 221.420(2)(a), and having concluded that ORS 221.420(2)(a) does not permit a city to exercise that power against a PUD, we finally consider the board's argument that those statutes operate to deprive the city of its constitutional "home rule" authority to elect its own political form. According to the board, a state law may not interfere

with the authority of a municipal electric utility to serve all customers in a city, because such a utility is an "organ" of the city government.

 As noted above, the board relies upon the city's "home rule" authority to pursue its own substantive policies in accordance with the scope of its city charter. The "home rule" provisions of the Oregon Constitution, set out at 339 Or 639 n 8, provide authority for the people of a city to determine the organization, and to define the powers, of their local government without first having to obtain authorization from the state legislature. *Jarvill v. City of Eugene*, 289 Or 157, 169, 613 P2d 1, *cert den*, 449 US 1013 (1980). The "home rule" provisions of the Oregon Constitution therefore preserve the authority of the people of a city to choose the organization and political form of their local government. *LaGrande / Astoria v. PERB*, 281 Or 137, 156-57, 576 P2d 1204, *adh'd to on reh'g*, 284 Or 173, 586 P2d 765 (1978). The exercise of that local authority, however, is limited by the rule that, "when a local enactment is found incompatible with a state law in an area of substantive policy, the state law will displace the local rule." *Id.* at 149.

 In this case, we have no trouble concluding that the territorial allocation statutes do not offend the city's authority in the manner that the board contends.[13] Those statutes do nothing to affect the structure or the form of the city's government and, instead, merely provide a comprehensive, statewide system for allocating service territories to different utility providers.

---

[13] We note that the board recognizes, as it must, that "ORS 758.405 expresses the purpose of [the territorial allocation statutes] as a matter of statewide economic or regulatory concern, and [that] those statutes themselves do constitute a 'general law' " that would prevail over any contrary local policy. Nevertheless, the board appears to argue that the PUC's allocation order to Emerald would not trump any contrary local policy in any event because that order is merely an administrative order that the PUC issued in the application of those statutes. We fail to understand the basis of that argument because, as the board acknowledges, the territorial allocation statutes authorized the PUC to issue the order allocating the area at issue to Emerald. Thus, although that *order* itself is not a state law of general applicability, the *authority* for that order comes from a state law of general applicability.

## III. CONCLUSION

In sum, we conclude that the territorial allocation statutes limit a city's authority to exclude a utility provider from an allocated exclusive service territory to the extent that ORS 221.420(2)(a) authorizes such an exclusion. Because ORS 221.420(2)(a) does not authorize a city to exclude a PUD, the board lacked authority to exclude Emerald from the exclusive service territory that the PUC had allocated to Emerald.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings.